**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**CUNNINGHAM CHARTER CORPORATION,**
**on behalf of itself and all others similarly**
**situated,**

      **Plaintiff,**

**v.**

**LEARJET, INC.,**

      **Defendant.**                            **Case No. 07-cv-233-DRH**


<u>**MEMORANDUM & ORDER**</u>


**HERNDON, Chief Judge:**


        Pending before the Court is plaintiff Cunningham Charter Corporation's ("Cunningham Charter") Motion for Class Certification (Doc. 64). Defendant Learjet, Inc. ("Learjet"), opposes the Motion (Doc. 69). Also pending is Learjet's Motion for Oral Argument on the Issue of Class Certification (Doc. 75). Because the Court denies Cunningham Charter's Motion for Class Certification based on the pleadings and the applicable case law, there is no need for oral arguments. Therefore, Learjet's Motion for Oral Argument is moot.

# I.  FACTUAL BACKGROUND

Prior to January 1999, Transcraft Corporation ("Transcraft"), which is not a party to this lawsuit, began negotiations to purchase a jet aircraft from Cessna Aircraft Company ("Cessna") (Doc. 3, Ex. A-1, p. 1).  Transcraft paid a $100,000 non-refundable deposit to Cessna in anticipation of purchasing a Citation Encore Ultra jet (Doc. 3, Ex. A-1, pp. 1-2).  Transcraft then entered into negotiations with Learjet, Cessna's competitor, for the purchase of a Learjet 45 aircraft (Doc. 3, Ex. A-1, p. 2).  As part of these negotiations, Learjet delivered to Transcraft a "Learjet 45-140 Proposal" containing the following overview of Learjet's warranty:

> **Parts and Labor for:**
>     **60 months/unlimited hours:**
>         > Airframe and Learjet Manufactured Components
>         > Avionics
>         > Vendor Supplied Items
>     **60 months/2,000 hours:**
>         > Garrett TFE-731-20 Engines
>     **24 months/unlimited hours:**
>         > Interior Furnishings and Exterior Finishing

(Doc. 3, Ex. A-1, p. 9).  Along with the warranty language in the proposal, Learjet also allegedly represented to William R. Cunningham, Transcraft's C.E.O., that the warranty was "the best warranty in the business 'nose to tail'" (Doc. 3, Ex. A-1, p. 2).

On January 31, 1999, Transcraft and Learjet entered into a "Learjet 45 Airplane Purchase Agreement" ("Airplane Purchase Agreement") (Doc. 3, Ex. A-1, p. 2).  Mr. Cunningham signed the Airplane Purchase Agreement on behalf of

Transcraft (Doc. 3, Ex. A-2, p. 8). As a result, Transcraft lost its $100,000 non-refundable deposit with Cessna (Doc. 3, Ex. A-1, p. 2). Subsequently, with Learjet's consent, Transcraft assigned its purchase rights in the Airplane Purchase Agreement to plaintiff Cunningham Charter[1] (Doc. 3, Ex. A-1, p. 2).

Section III of that Airplane Purchase Agreement provided that "EXCEPT FOR THE EXPRESS TERMS OF THE LEARJET AIRPLANE WARRANTY POLICY SET FORTH IN THE SPECIFICATION, LEARJET MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE" (Doc. 69, Ex. 1, p. 2). Learjet insists that all Learjet 45 owners receive a Specification, and that the applicable Specification contains the written terms of each Learjet 45 warranty (Doc. 47, Ex. 4, p. 3).

The parties dispute whether Transcraft, Cunningham Charter, and/or Mr. Cunningham ever received a copy of the relevant Specification. Learjet claims Mr. Cunningham received a September 1998 Specification with the Airplane Purchase Agreement, and points to Mr. Cunningham's initials on the first page of the September 1998 Specification (Doc. 47, Ex. 1, p. 5). In his deposition, Mr. Cunningham acknowledged initialing the first page of the September 1998 Specification, but denied receiving the remainder of the pages containing the written warranty (Doc. 69, Ex. 3, pp. 8-9).

---

[1] Cunningham Charter is a corporation formed by its sole owner, William R. Cunningham, to own and operate the Learjet 45.

Section 12 of the September 1998 Specification contains the Learjet Airplane Warranty Policy wherein Learjet warrants, subject to the enumerated Exclusions and Limitations, that:

> Upon receipt of prompt notification (90 days) and satisfactory evidence of the defect, including return of the defective part where possible, Learjet, or an authorized representative shall:

> **A.**     **Repair or replace all Airplane components if a failure occurs:**

> (1) During the first **60 months** after delivery
> - Learjet manufactured parts and components
> - Standard Honeywell avionics
> - All vendor components
>
> (2) During the first **24 months** after delivery
> - Interior furnishings and exterior finishing

(Doc. 69, Ex. 1(A), p. 15.)

After Cunningham Charter received and began operating its Learjet 45 aircraft in February 2001, a number of the aircraft's components allegedly failed and/or experienced problems. Cunningham Charter attempted to get these repairs and replacements reimbursed under the warranty, but some of its claims were apparently denied (Doc. 3, Ex. A-1, p. 2). In response to Cunningham Charter's request, Spencer Bain, Learjet's Sales Support Administrator, confirmed the warranty on the Learjet 45 in a document dated February 19, 2002 (Doc. 3, Ex. A-1, pp. 2-3). That document described the standard Learjet 45 warranty as follows:

> Each Learjet 45 warranty covers parts and labor costs for work performed at Bombardier Aviation Service Centers and recognized facilities for:

- Learjet Manufactured Airframe & Systems    Five (5) years
- Learjet Manufactured Primary Structures    Five (5) years
- Standard Avionics    Five (5) years
- Engines    Five (5) years/2,000 hours
- Vendor Supplied Items    Five (5) years
- Paint & Interior    Two (2) years

(Doc. 3, Ex. A-2, p. 11).[2] According to Cunningham Charter, Learjet continued to wrongfully deny legitimate warranty claims under this warranty language.

## II. <u>PROCEDURAL HISTORY</u>

On March 5, 2007, Cunningham Charter filed a Class Action Complaint in Union County, Illinois (Doc. 3, Ex. A-1). Cunningham Charter's Complaint asserts two distinct claims: one for breach of warranty and one for product liability. Specific to its breach of warranty claim, Cunningham Charter alleges, "Learjet has made a practice of improperly denying warranty claims by claiming that some of the vendor supplied items are 'interior' and, therefore, only covered for two (2) years, rather than five (5) years as stated in the warranty" (Doc. 3, Ex. A-1, p. 4). As an example, Cunningham Charter points to Learjet's alleged admission that it does not manufacture the coffee pots on its aircraft; rather, vendors supply those coffee pots. Cunningham Charter explains that

---

[2] The three warranty representations outlined by the Court – those found in the "Learjet 45-140 Proposal," Section 12 of the September 1998 Specification, and Spencer Bain's letter to Cunningham Charter – describe materially identical warranty coverage. Section 12 of the September 1998 Specification, however, contains detailed Exclusions, Limitations, and claim filing procedures. Learjet argues that because the Airplane Purchase Agreement explicitly refers to the Specification as the only source of a warranty, Section 12 of the September 1998 Specification governs Cunningham Charter's warranty claims. Cunningham Charter does not dispute that the Specification contains its warranty, and insists that its class-wide claims are based on a written warranty. Mr. Cunningham, on the other hand, denies receiving or reading the warranty contained in the September 1998 Specification even though he acknowledged initialing the first page.

despite the coffee pots' apparent fit into the "vendor supplied items" category that receives five years of coverage under the warranty, Learjet treats coffee pots as "interior" items covered for only two years (Doc. 3, Ex. A-1, p. 4).

As for its product liability claim, Cunningham Charter alleges that "windshields, batteries and other items" on Learjet 45 aircraft are defective in design or manufacture (Doc. 3, Ex. A-1, p. 4). Cunningham Charter fails to identify the alleged defects or describe the circumstances under which these items failed on its own aircraft. Despite including this separate product liability claim, Cunningham Charter does not allege it suffered any non-economic injury as a result of the defects in design or manufacture.

Cunningham Charter seeks damages of at least $282,107.33 for repairs and denied warranty claims, and $100,000 for Transcraft's lost down payment to Cessna, plus interest. In the "Class Action Allegations" portion of its Complaint, Cunningham Charter seeks to represent "all others similarly situated, who within the applicable period of limitations purchased Learjet Aircraft from Defendant" (Doc. 3, Ex. A-1, p. 4). Cunningham Charter defines the putative class in its Complaint as "those who purchased Lear jets from [Defendant] pursuant to Agreements in the form of [the Learjet 45-140 Proposal and the Learjet 45 Airplane Purchase Agreement]" (Doc. 3, Ex. A-1, p. 4).

On April 3, 2007 Learjet removed this suit from state court under the Class Action Fairness Act ("CAFA"), **28 U.S.C. § 1453** (Doc. 3). After a period of discovery, Cunningham Charter moved to remand, arguing that Learjet did not

establish CAFA's minimum requirement to show that the suit had a minimum of one hundred class members (Doc. 34). Learjet responded that Cunningham Charter's broad proposed class definition included buyers with "similar" warranty language in the breach of warranty class, which established a putative class with over one hundred members (Doc. 47). Specifically, Learjet stated that "[a]t a minimum, one hundred and twenty-six (126) aircraft sold to ninety-six (96) unique outside purchasers of Learjet Model 45 business jets have the identical warranty language as Plaintiff" (Doc. 47, p. 1). As to Cunningham Charter's product liability claims, Learjet argued that the class-wide defective design allegations encompassed every purchaser of a Learjet 45 jet, a number well over CAFA's minimum requirement of one hundred (Doc. 47, p. 5).

On September 9, 2008, after conducting an *in camera* review of various Learjet Airplane Purchase Agreements, the Court found that Learjet made an adequate showing that at least one hundred potential class members existed and denied Cunningham Charter's Motion to Remand (Doc. 59). Thereafter, Cunningham Charter filed this presently pending Motion for Class Certification (Doc. 64). Learjet filed its Memorandum in Opposition (Doc. 69), to which Cunningham Charter replied (Doc. 73). Cunningham Charter then filed a Supplement, seeking to bring to the Court's attention a class action that was recently certified in the Southern District of Illinois[3] (Doc. 74). In response to

---

[3] Cunningham Charter pointed to Judge Gilbert's certification order in ***Leib v. Rex Energy Operating Corp.,* No. 06-cv-802-JPG-CJP, 2008 WL 5377792 (S.D. Ill. Dec. 19, 2008)**, but ***Leib*** is not analogous and does not strengthen its arguments in support of class certification.

that Supplement and due to its inability to respond in writing, Learjet filed a Motion for Oral Argument on Cunningham Charter's Motion for Class Certification (Doc. 75).

### III. CLASS CERTIFICATION

A party seeking class certification in federal court must comply with the requirements of **Rule 23** of the **FEDERAL RULES OF CIVIL PROCEDURE**. In order to certify a class under Rule 23, the party must show that its proposed class satisfies every one of the four prerequisites under Rule 23(a), and that its proposed class falls within at least one of the enumerated Rule 23(b) categories. *See* FED. R. CIV. P. 23(a), 23(b). The four Rule 23(a) prerequisites are that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). FED. R. CIV. P. 23(a). Rule 23(b) lists three broad categories of cases suitable for treatment as class actions. *See* FED. R. CIV. P. 23(b).

The burden of proving that all four Rule 23(a) prerequisites are satisfied and that the proposed class falls within one of the three Rule 23(b) categories rests squarely with the party seeking class certification. ***Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)***.

Failure to establish any of these Rule 23 requirements precludes certification. *Id.* Courts enjoy broad discretion in deciding whether the party seeking certification has met its burden of proof. ***Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)**. While a court generally may not consider a party's probability of success on the merits when deciding a motion for class certification, it should look beyond the pleadings to "make whatever factual and legal inquiries are necessary" to determine whether all Rule 23 requirements have been met. ***Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)**.

## IV. ANALYSIS

Cunningham Charter asks the Court to certify two classes: a product liability class and a separate breach of warranty subclass (Doc. 65, p. 1). Rule 23 treats subclasses as regular classes that must independently satisfy every Rule 23 requirement. *See* FED. R. CIV. P. 23(c)(5). Because neither of Cunningham Charter's proposed classes satisfies every Rule 23 requirement as necessary for class certification, the Court will analyze only those areas of Rule 23 where either proposed class definitely fails. Discussion of those Rule 23 requirements that either proposed class may satisfy would be moot and unnecessary for the denial of class certification, so the Court will forgo such discussion.

### A. The Two Implied Rule 23 Prerequisites

Before addressing the four Rule 23(a) prerequisites, courts must determine whether the putative class meets two additional implied prerequisites

of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. ***See Alliance to End Repression v. Rochford,*** **565 F.2d 975, 977 (7th Cir. 1977);** ***Clay v. Am. Tobacco Co.,*** **188 F.R.D. 483, 490 (S.D. Ill. 1999)**. A sufficiently precise class definition enables the court to weigh whether trying the lawsuit through the class mechanism would be burdensome and inefficient for both the court and the parties. ***Simer v. Rios,*** **661 F.2d 655, 670 (7th Cir. 1981)**. Proper class definition also ensures that only those individuals actually harmed by a defendant's wrongful conduct receive the benefits of relief. ***Id.*** In addition, where a party seeks to certify a class under Rule 23(b)(3), precise class definition is necessary to provide the "best notice that is practicable under the circumstances" and ensure the binding effect of judgment on class members. ***See* Fed. R. Civ. P. 23(c)(1)(B), 23(c)(2)(B), 23(c)(3)(B)**.

### *The Breach of Warranty Class*

Cunningham Charter is inconsistent in the way it defines its proposed breach of warranty subclass. In its Memorandum in Support of Class Certification, Cunningham Charter first defines the proposed breach of warranty subclass as "all purchasers of a Learjet aircraft which was [sic] sold with a warranty identical or nearly identical to the warranty received by Cunningham Charter" (Doc. 65, p. 1). Later in the same document, it defines the proposed

breach of warranty subclass as "Learjet owners who received a warranty with language identical to the warranty received by Cunningham"[4] (Doc. 65, p. 3).

Specific to its breach of warranty claims, Cunningham Charter alleges that Learjet breached the warranty it provided to Cunningham Charter "by failing to cover items that should have clearly been covered under the plain terms of the warranty" (Doc. 65, p. 3). Cunningham Charter does not elaborate on either its general breach of warranty theory or the specific circumstances under which any of its own warranty claims were denied. It fails to specify the "plain terms of the warranty" Learjet allegedly breached or how Learjet's denial of any specific warranty claim breached these plain terms.[5]

The closest Cunningham Charter comes to articulating a breach of warranty theory is in its Complaint. There, it points to Learjet's denial of a warranty claim for a broken coffee pot on the grounds that it is an "interior" item only covered for twenty four months, even while Learjet admits that coffee pots are items supplied by vendors. According to Cunningham Charter, the warranty covers "vendor supplied items" for sixty months, making Learjet's denial of

---

[4] In addition to being inconsistent by including "nearly identical" warranties in one proposed class definition but not the other, Cunningham Charter is also careless in its use of the terms "purchasers" and later "owners." Limiting the class to purchasers as opposed to owners would change the membership of the class because as Learjet's Director of Warranty stated in his affidavit, at least thirty entities currently own Learjet 45 aircraft with identical warranty language to the September 1998 Specification that did not originally purchase the aircraft (Doc. 47, Ex. 4, p. 5). This group includes Cunningham Charter. So to the extent the class definition includes only original purchasers, Cunningham would also not be a member of its proposed class. The Court notes that this is yet another problem with Cunningham Charter's proposed breach of warranty class definition/s.

[5] In fact, Cunningham Charter does not even identify the source of those plain terms, by reference to a written document or otherwise.

warranty claims for coffee pots after twenty-four months a breach of warranty. To support its proposed breach of warranty class definition, Cunningham Charter points to the deposition testimony of Eric Richardson, Learjet's Director of Warranty, indicating that Learjet applies identical warranty language in a uniform manner among its customers (Doc. 65, p. 3). Cunningham Charter also asserts "there is simply no reason to believe that Cunningham Charter was treated differently by Learjet's warranty department than any other class member" (Doc. 65, p. 3).

Turning to the two implied Rule 23 prerequisites, a number of defects with Cunningham Charter's proposed breach of warranty class become apparent. The first defect is with the proposed class definition. As Learjet points out, one of Cunningham Charter's proposed definitions includes warranties that are "nearly identical" to the warranty received by Cunningham. Cunningham does not explain what "nearly identical" warranty language entails, and therefore does not provide the Court with objective criteria to determine membership in the class. Cunningham Charter does not even point to the specific warranty language on which it bases its claims, or the source of that language, giving the Court no objective means for determining what would qualify as identical warranty language.

Even taking the second, narrower definition that Cunningham Charter proposes – the one excluding "nearly identical" warranties – there remain substantial problems with the proposed breach of warranty subclass. Namely,

Cunningham Charter's proposed class definition is overly broad. For example, there may be Learjet owners who fall within the proposed breach of warranty class definition who have never even made a warranty claim during their warranty period, much less had a claim denied. ***See, e.g., Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 581 (N.D. Ill. 2005),** *aff'd* **472 F.3d 506 (7th Cir. 2006) (finding that plaintiff's proposed class definition of consumer fraud class consisting of "all purchasers of diet Coke in Illinois during a five year period" was overly inclusive and encompassed members without any injury or identifiable basis for standing)**. Similarly, there may be Learjet owners with identical warranty language who had claims denied for completely different reasons, such as submitting a claim past the required ninety-day period. Cunningham Charter has not articulated any breach of warranty theory that would entitle these Learjet 45 owners to relief, yet they are included in the proposed class definition.

The breach of warranty theory proposed by Cunningham Charter fails to offer any meaningful or objective criteria to establish class membership. The conclusory allegation that Learjet "fail[ed] to cover items that should have clearly been covered under the plain terms of the warranty" implicates every single warranty claim denial for every single Learjet owner with a warranty identical to Cunningham Charter's. In order to determine whether a Learjet owner with an identical warranty is a class member, the Court would have to first

determine whether the owner made a warranty claim that was denied but should have been covered under the plain terms of the warranty (assuming that the Court actually knew the warranty terms to which Cunningham Charter refers). This could likely necessitate an individualized trial on the propriety of a warranty claim denial for every Learjet owner just to determine class membership. Other courts have refused to go that route because doing so defeats the purpose of the class mechanism. **See, e.g., Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 (E.D. Pa. 2000) (collecting relevant cases and explaining that "[b]ecause it would be impossible to definitively identify class members prior to individualized fact-finding and litigation, the proposed classes . . . fail to satisfy one of the basic requirements for a class action")**.

In addition to the problems with class definition, there is also a question as to whether Cunningham Charter satisfies the second implied prerequisite of Rule 23 – that it be a member of the class it seeks to represent. Cunningham Charter seeks to represent a class of Learjet owners/purchasers[6] with identical warranty language, insisting that its breach of warranty claim is based on a "written warranty" (Doc. 73, p. 3). Yet, Cunningham Charter fails to cite the source of that written warranty or identify the "identical warranty language" it refers to. Learjet presented evidence that all written warranties for Learjet 45's are contained in the Specification documents provided to purchasers (Doc. 69, Ex. 4, p. 3). In fact, the Airplane Purchase Agreement signed by Mr.

---

[6] *See supra* note 4.

Cunningham on behalf of Transcraft explicitly referred to the Specification as the source of the warranty while disclaiming all other warranties, express or implied (Doc. 69, Ex. 1, p. 2). But, as Learjet points out, Mr. Cunningham unequivocally denied receiving that Specification, even though he acknowledged initialing the first page (Doc. 69, Ex. 3, pp. 8-9).

To the extent that Cunningham Charter seeks to represent a class of Learjet owners/purchasers who received identical written warranties in their Specification documents, it is possible that it may not even be a member of its own proposed class because at this point, it is not clear whether the September 1998 Specification governs Cunningham Charter's individual "written warranty" claims. Cunningham Charter has muddied the issue further by alleging that it received an oral "nose to tail" warranty from Learjet (Doc. 3, Ex. A-1, p. 2). While the Court suspects that the written warranty in the September 1998 Specification would, in the end, govern Cunningham Charter's own breach of warranty claims, Cunningham Charter has made no effort to resolve the factual and legal ambiguities it created through its own pleadings. Given that Cunningham Charter has the burden of proof on all of the Rule 23 requirements, the Court finds that it has not met that burden regarding the second implied prerequisite of Rule 23.

For the reasons stated above, the Court finds that Cunningham Charter's proposed breach of warranty subclass fails to satisfy either of the Rule 23 implied prerequisites. Its proposed class definition is not sufficiently precise to enable the Court to ascertain the identity of class members by reference to

objective criteria, and it has not met its burden of proving that it is a member of the class it seeks to represent.

**B.     The Four Rule 23(a) Prerequisites**

     **1.     Numerosity**

The first Rule 23(a) prerequisite, numerosity, requires that the class be "so numerous that joinder of all members is impracticable." **FED. R. CIV. P. 23(a)(1)**. In light of the fatal defects in both of Cunningham Charter's proposed classes with respect to the other Rule 23 requirements, the Court will forgo analysis of the numerosity prerequisite and will focus instead on those fatal defects.

     **2.     Commonality**

The second Rule 23(a) prerequisite, commonality, requires that there be "questions of law or fact common to the class." **FED. R. CIV. P. 23(a)(2)**. Courts generally find that there is sufficient commonality among class members if their claims share a "common nucleus of operative fact." ***Rosario v. Livaditis,*** **963 F.2d 1013, 1018 (7th Cir. 1992)**. Some factual variation does not preclude a finding of commonality; there need only be at least one question of law or fact common to the class. ***Keele v. Wexler,*** **149 F.3d 589, 594 (7th Cir. 1998)**.

*The Breach of Warranty Class*

Cunningham Charter argues that "the question of whether a particular claim under the warranty for the failure of a specific part should have

been covered by the warranty is a question of fact that is common to all owners of a Learjet 45" (Doc. 65, p. 9). The question Cunningham Charter points to as being "common" is anything but. Namely, whether a "particular claim . . . for the failure of a specific part should have been covered under the warranty" is both an extremely broad and highly individualized question. Learjet's Director of Warranty explained that some 4,500 parts are covered under the Learjet 45 warranty (Doc. 69, Ex. 4, p. 4). Cunningham Charter does not narrow its proposed common question down to a specific part out of the 4,500 covered parts, nor does it limit the common question to a particular reason for denial of a claim. Presumably, some parts failed for some owners but not for others, and some warranty claims were approved and some were denied.

Indeed, the individual denials may have been for completely different reasons. Just as an example, the warranty in the September 1998 Specification has three prerequisites for reimbursement that are completely independent of the validity of the underlying claim: 1) prompt notification of the defect within ninety days, 2) satisfactory evidence of the defect, and 3) return of the defective part, where possible (Doc. 69, Ex. 1(A), p. 15). Thus, two Learjet owners suffering the same component failure under identical warranties may have experienced different warranty claim outcomes depending on their compliance with these prerequisites. The question of whether a particular claim for a particular part should have been covered under the warranty is not a question common to the class, but is instead a highly individualized inquiry. Therefore, Cunningham

Charter has failed to offer a question of law or fact common to its proposed breach of warranty class sufficient to satisfy the commonality prerequisite of Rule 23(a).

### 3.      Typicality

The third Rule 23(a) prerequisite, typicality, requires that the claims of the representative party be "typical of the claims . . . of the class." **FED. R. CIV. P. 23(a)(3)**. While the questions of commonality and typicality are closely related, when evaluating typicality, courts generally focus on the conduct of the defendant and the nature of the injuries to the putative class members. **_Rosario,_ 963 F.2d at 1018**. A party's claim is typical if "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and the [plaintiff's] claims are based on the same legal theory.'" **_Keele,_ 149 F.3d at 595 (quoting _De La Fuente v. Stokely-Van Camp, Inc.,_ 713 F.2d 225, 232 (7th Cir. 1983))**.

#### _The Breach of Warranty Class_

Cunningham Charter argues that its breach of warranty claims are typical because it seeks to represent a class with identical warranty language and because "[t]here is no reason to believe that Learjet has adjudicated Cunningham Charter Charter's warranty claims any differently than it adjudicated the claims of others possessing identical Learjet warranties" (Doc. 65, pp. 9-10). In support, Cunningham Charter points again to the deposition testimony of Learjet's

Director of Warranty that the "'Warranty Department has applied their efforts to [Cunningham Charter's] aircraft as they have all other aircraft'" (Doc. 65, p. 10).

Cunningham Charter's ambiguous proposed class definition and breach of warranty theory create substantial typicality problems. Namely, Cunningham Charter's inclusion of all Learjet owners with identical warranty language in its proposed class, regardless of whether they had warranty claims denied or not, casts doubt on whether Cunningham Charter's claim is typical of all class members. After all, the proposed breach of warranty class will likely include Learjet owners who do not even have a breach of warranty claim. Also, as with the commonality prerequisite, Cunningham Charter's failure to limit its breach of warranty theory to claims for specific parts or to denials for specific reasons creates a class with countless different potential breach of warranty claims. Most of the potential class members' claims, assuming they exist, would likely be for different aircraft parts and would challenge denials for different reasons. In that sense, Cunningham Charter's claims would not be typical of the claims of the class that it seeks to represent. Similarly, since Learjet denied different claims on different parts for different reasons, it cannot be said that it acted in a uniform manner that produced similar injuries to the members of the class. Therefore, Cunningham Charter's proposed breach of warranty class fails to satisfy the typicality prerequisite of Rule 23(a).

### 4. Adequacy

The fourth Rule 23(a) prerequisite, adequacy, requires that the class representative be able to "fairly and adequately protect the interests of the class." **FED. R. CIV. P. 23(a)(4)**.  In order to satisfy the adequacy prerequisite, the class representative must "possess the same interest and suffer the same injury as the class members." ***Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002)**.  A class representative is adequate as long as its claims do not conflict with, and are not antagonistic to the claims and interests of the class members it seeks to represent.  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).  The adequacy prerequisite also extends to class counsel, and requires that the court select counsel that is "best able to represent the interests of the class." ***See* FED. R. CIV. P. 23(g)**.

### The Product Liability Class

Learjet does not specifically challenge Cunningham Charter's adequacy as a class representative for the proposed product liability class.  While Cunningham Charter does not appear to have any interests directly antagonistic to members of its proposed class, there is serious doubt as to whether it could be an adequate representative for a nationwide product liability class.  Specifically, Cunningham Charter does not allege that it has suffered anything but purely economic injuries from the allegedly defective "windshields, batteries and other items" on its Learjet 45 aircraft (Doc. 3, Ex. A-1, p.4).  While its proposed product

liability class of all Learjet 45 owners would include other owners who suffered only economic injuries, it could also encompass owners who may have suffered physical injuries because of the alleged defects. Thus, it is possible that Cunningham Charter would not have suffered the same injury as some of the potential class members it seeks to represent.

In addition, some states allow recovery of purely economic losses under product liability claims, some allow recovery only under limited circumstances, and others prohibit all such recovery. ***See In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015-17 (7th Cir. 2002)**. These material differences in state law raise serious doubt as to whether a class representative governed by the product liability law of one state could ever be an adequate representative for a nationwide class. The Court need not definitively resolve the adequacy issue, however, as it finds that Cunningham Charter's proposed product liability class does not fit within any of the Rule 23(b) categories. The Seventh Circuit has dealt with such conflicting state law issues in proposed nationwide classes under Rule 23(b), and this Court will do the same. ***See id.***

### *The Breach of Warranty Class*

Although Cunningham Charter does not appear to have any interests directly antagonistic to members of its proposed breach of warranty class, the numerous other defects with its class definition and breach of warranty theory

suggest that it may not have suffered the same injury as did many of the potential class members.  Given the different types of injuries among class members, it is unlikely that Cunningham Charter would make an adequate class representative.  Specifically, individualized proof of Cunningham Charter's own breach of warranty claim would do little to nothing to advance many other breach of warranty claims based on different parts or different reasons for denial of the claim.  Therefore, Cunningham Charter's proposed breach of warranty class fails to satisfy the adequacy prerequisite of Rule 23(a).

**C.      The Rule 23(b) Requirements**

In addition to satisfying both of the Rule 23 implied prerequisites and all four of the Rule 23(a) prerequisites, the party seeking class certification must demonstrate that its proposed class falls within at least one of the enumerated Rule 23(b) categories.  "A court should endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list." *Jefferson v. Ingersoll Int'l, Inc.,* **195 F.3d 894, 898 (7th Cir. 1999)**.  Cunningham Charter argues that its proposed classes fall within one or both of the Rule 23(b)(1)(A) and Rule 23(b)(3) categories.  Each category is discussed in turn.

**1.      Rule 23(b)(1)(A)**

Rule 23(b)(1)(A) authorizes the certification of a class action if "prosecuting separate actions by or against individual class members would

create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." **FED. R. CIV. P. 3(b)(1)(A)**. The Supreme Court has explained that "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" *Amchem Prods., Inc. v. Windsor,* **521 U.S. 591, 614 (1997) (citation omitted)**.

Cunningham Charter argues that "Learjet must, as a practical necessity, treat alike all those who own a Learjet aircraft and possess a warranty identical or nearly identical to Cunningham Charter" (Doc. 65, p. 12). It asserts that "Learjet would certainly be at risk of inconsistent or varying adjudications if each new owner of a Learjet Model 45 brought a separate claim, resulting in incompatible standards for Learjet to attempt to follow when honoring claims brought under the warranties at issue in this case or when addressing claims of defective design and/or manufacture" (Doc. 65, p. 13). Learjet responds that certification under Rule 23(b)(1)(A) is proper only if separate judgments entered in separated lawsuits would force it comply with one court order and yet violate another one (Doc. 69, p. 10). Where, as in this case, the putative class members seek only monetary damages and no declaratory or injunctive relief, Learjet

argues that there is no risk of incompatible conduct because paying one claimant is not inconsistent with paying another (Doc. 69, p. 10).

Learjet is correct that neither Cunningham Charter's product liability class nor its breach of warranty class are appropriate for certification under Rule 23(b)(1)(A). The Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted." ***Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833 (1999)**. Classes certified under Rule 23(b)(1)(A) are generally "mandatory" in nature: there is no notice requirement and class members do not have an opportunity to opt out and not be bound by the eventual judgment. ***See* FED. R. CIV. P. 23(c)(2); *Ticor Ins. Co. v. Brown,* 511 U.S. 117, 121 (1994)**. As a result, the Supreme Court has disapproved of the creative use of Rule 23(b)(1) when it would eliminate notice and opt-out rights in class actions seeking substantial monetary damages. ***See Jefferson,* 195 F.3d at 897 (pointing to the Supreme Court's *Ortiz* decision)**.

Indeed, the Seventh Circuit has explicitly instructed that "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out." ***Id.* at 898**. ***See also* Manual for Complex Litigation (Fourth) § 21.22 (2005)**. In ***Jefferson***, the Seventh Circuit vacated class certification under Rule 23(b)(2) of a Title VII claim where the class sought injunctive, compensatory, and punitive relief. ***Jefferson,* 195 F.3d at 897**. Even though the class representative did

seek an injunction, the court felt that the presence of substantial damages necessitated certification under Rule 23(b)(3), rather than under Rule 23(b)(2). *Id.* The court cited the possibility of collateral attack on the judgment by class members who could contend that the absence of an opportunity to opt out and proceed independently was a due process violation. *Id.*

Unlike the plaintiff in ***Jefferson***, Cunningham Charter does not seek any form of injunctive or declaratory relief. It seeks strictly monetary relief and claims it has personally been damaged to the tune of more than $382,000.000. Cunningham Charter argues that the Court should certify similar claims under Rule 23(b)(1)(A) because inconsistent judgments in independent lawsuits would create incompatible standards of conduct for Learjet. But there is no indication that other lawsuits would seek opposing or incompatible injunctions or declarations.

Other Circuits have squarely rejected Cunningham Charter's rationale for certification under Rule 23(b)(1)(A). The Sixth Circuit, for example, issued a writ of mandamus ordering a district court to decertify a class that was certified under Rule 23(b)(1)(A) pursuant to Cunningham Charter's theory. ***See In re Bendictin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) (explaining that "[t]he fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)") (citing, *inter alia, McDonnell Douglas Corp. v.***

***United States Dist. Ct. for the Cent. Dist. of Cal.,* 523 F.2d 1083, 1086 (9th Cir. 1975)).** Similarly, the Fourth Circuit affirmed a rejection of Cunningham Charter's Rule 23(b)(1)(A) theory because "[t]he danger of imposing 'incompatible standards of conduct' on the party opposing the class is . . . not normally posed by a request for money damages." ***Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir. 1986**).

Cunningham Charter responds by pointing to two district court cases that certified Rule 23(b)(1)(A) class actions that sought exclusively money damages: ***Hash v. U.S.,* No. 99-324, 2000 WL 1460801 (D. Idaho July 7, 2000) and *Lowers v. U.S.,* No. 99-90039, 2001 WL 1200869 (S.D. Iowa May 2, 2001**) (Doc. 73, p. 5). In those cases, owners of property adjacent to specific stretches of abandoned railroads sued the government under a Fifth Amendment taking theory. ***Hash,* 2000 WL 1460801, at *1; *Lowers,* 2001 WL 1200869, at *1-2.** After the railroads were abandoned, Congress passed the "Rails-to-Trails Act," which converted the railroad to public trail use under federal law, instead of allowing the land to revert to adjacent property owners under state law. ***See Hash,* 2000 WL 1460801, at *1.** The courts in those cases felt comfortable certifying the class of property owners under Rule 23(b)(1)(A) because they all lived adjacent to the same trail corridor. ***Hash,* 2000 WL 1460801, at *11-12; *Lowers,* 2001 WL 1200869, at *6.** Consequently, the risk of inconsistent judgments in independent suits by the landowners would potentially create a

scenario where some parts of the trail were found to be public under federal law, while other stretches were found to be private under state law. *Id.* Indeed, this outcome comported with the Supreme Court's example of a proper 23(b)(1)(A) class adjudicating a riparian owner's water rights against downriver owners, since there the upstream owner must treat all downstream owners alike as a matter of practical necessity. *See Amchem,* **521 U.S. at 614**.

Neither Cunningham Charter's proposed product liability class nor its proposed breach of warranty class pose a similar risk because Learjet does not have to treat all Learjet owners and purchasers the same as a matter of practical necessity. This clear distinction, along with the Seventh Circuit's plain instruction that cases seeking substantial money damages are best certified under Rule 23(b)(3), leads the Court to conclude that neither of Cunningham Charter's proposed classes can be certified under Rule 23(b)(1)(A).

**2.   Rule 23(b)(3)**

Rule 23(b)(3) authorizes the certification of a class action if "the court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **FED. R. CIV. P. 23(b)(3)**. Rule 23(b)(3) lists four non-exhaustive factors relevant to a determination of "predominance" and "superiority": 1) "the class members' interest in individually controlling the prosecution or defense of

separate actions"; 2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; 3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and 4) "the likely difficulties in managing a class action." **FED. R. CIV. P. 23(b)(3)**.

The Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem,* **521 U.S. at 615 (citation omitted)**. Moreover, implicit in Rule 23(b)(3) is the understanding that it was designed "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.,* **109 F.3d 338, 344 (7th Cir. 1997)**.

Since Cunningham Charter seeks to certify two separate classes, the Rule 23(b)(3) requirements with respect to each class are discussed in turn.

### *The Product Liability Class*

Cunningham Charter argues that its proposed product liability class meets both the predominance and superiority requirements of Rule 23(b)(3).

Specifically, Cunningham Charter suggests that it can "offer proof of defects in design and/or manufacture that are common to every Learjet 45 sold" (Doc. 65, p. 15). Cunningham identifies the question common to the class as whether the windshields, batteries, and other items on Learjet 45 aircraft are defective in design or manufacture. It then argues that individualized issues do not predominate because Learjet has already admitted that all Learjet 45s were equipped "with (at least) the same airframe, wheels, tires, brakes, lighting, batteries, wiring, seats, [and] windshields" (Doc. 73, p. 7). Cunningham Charter feels that if it can prove that the relevant parts on its Learjet 45 were defective in design or manufacture, then all class members would prevail on their product liability claims (Doc. 73, p. 7).

Learjet responds that since Cunningham Charter proposes to represent a nationwide class, product liability choice of law issues raise individualized questions that preclude a finding of predominance (Doc. 69, p. 14). Indeed, Cunningham Charter has failed to make any choice of law analysis with respect to its product liability claim. Also without any accompanying choice of law analysis, Learjet suggests that Kansas law would arguably control Cunningham Charter's product liability claim (Doc. 69, p. 14). Learjet then points to the facts that Cunningham Charter's alleged injuries are purely economic and that Kansas bars recovery under product liability theories for purely economic loss (Doc. 69, p. 15). Learjet argues that the controlling law of other states places similar limitations on a plaintiff's ability to recover for

economic loss under a product liability theory, and Cunningham Charter has failed to address how individualized choice of law questions would affect its putative nationwide class (Doc. 69, p. 15).

The Seventh Circuit has stated that certification of a class is not proper "unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.,* **288 F.3d at 1015**. As a prerequisite to class certification, the court must be satisfied that choice of law and potential conflict of law issues are resolved so that there are no predominance or manageability problems with the proposed class. *See Szabo v. Bridgeport Machs., Inc.,* **249 F.3d 672, 674-76 (7th Cir. 2001)**. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.,* **84 F.3d 734, 741 (5th Cir. 1996)**. The burden of proof on the requirement that choice of law and conflict of law issues not present any predominance or manageability issues rests squarely with the plaintiff. *Spence v. Glock, Ges.m.b.H.,* **227 F.3d 308, 313 (5th Cir. 2000)**. If a plaintiff fails to present a sufficient choice of law analysis, it fails to meet its burden of proof on Rule 23(b)(3)'s predominance requirement. *Id.*

Cunningham Charter failed to present any choice of law and conflict of law analysis for its proposed product liability claim, and also failed to propose which state law would govern its own product liability claim. In fact, Cunningham Charter incorrectly suggests that it is Learjet's burden to prove outcome

determinative differences between Illinois law and the law of other states (Doc. 73, pp. 9-10). Alternatively, Cunningham Charter blames the choice of law defects with its product liability class on Learjet's refusal to provide Cunningham Charter with the information necessary to make that determination (Doc. 73, p. 9). But an opposing party's failure to produce evidence is not an argument for class certification, and is best resolved through hearings and arguments specific to discovery issues. Because it did not address choice of law or conflict of law issues for its proposed product liability class, Cunningham Charter has failed in its burden of proof on Rule 23(b)(3)'s predominance requirement.

Even if Cunningham Charter had attempted to conduct a thorough choice of law analysis, it would have likely failed to establish predominance for its nationwide product liability class. The Seventh Circuit has repeatedly rejected attempts to certify nationwide Rule 23(b)(3) tort classes. In *In re Bridgestone/Firestone*, for example, the Seventh Circuit vacated class certification under Rule 23(b)(3) of a nationwide class of defective tire owners that sued for economic injuries such as diminished value. *In re Bridgestone/Firestone, Inc.,* **288 F.3d at 1015-1017.** The Seventh Circuit pointed to variations among state law on the question of whether a plaintiff can recover for purely economic injuries under a tort theory as a reason for why the predominance requirement was not satisfied. *Id.* **at 1017**. The court concluded that "state laws about theories such as those presented by our plaintiffs differ,

and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes." **Id. at 1015 (citing Isaacs v. Sprint Corp., 261 F.3d 679 (7th Cir. 2001); Szabo v. Bridgeport Machs., Inc., 249 F.3d 672 (7th Cir. 2001); In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995)**).

Indeed, even a cursory choice of law analysis reveals that Cunningham Charter itself is probably not entitled to recover under a product liability theory for purely economic losses, much less is it entitled to represent a nationwide class under that theory. Because district courts must use the choice of law rules from the state in which they sit, this Court would use Illinois choice of law rules for product liability claims. **See In re Bridgestone/Firestone, Inc., 288 F.3d at 1015**. Illinois courts employ the **Restatement (Second) of Conflict of Laws § 145**, which looks to 1) place of injury, 2) place of conduct causing injury, 3) domicile of the parties, and 4) center of relationship between the parties to determine which law will apply. **See Townsend v. Sears, Roebuck and Co., 227 Ill.2d 147, 160 (Ill. 2007)**.

Even without the full facts necessary for a precise determination, it is likely that either the law of Illinois or Kansas would apply given that those are the respective domiciles of the parties, the places where the conduct and injuries occurred, and probably where the relationship between the parties was centered. Neither Illinois nor Kansas allows plaintiffs to recover purely economic losses

under product liability theories.  ***See Loman v. Freeman,* 874 N.E.2d 542, 550 (Ill. App. Ct. 2006); *Kestrel Holdings I, L.L.C. v. Learjet, Inc.,* 316 F. Supp. 2d 1071, 1075-76 (D. Kan. 2004)**.  Given Cunningham Charter's inability to recover purely economic losses on its own product liability claim, it cannot possibly represent a class that would include Learjet 45 owners who could, theoretically, recover under such a theory.  Accordingly, Cunningham Charter's proposed product liability class fails to satisfy the requirements of Rule 23(b)(3).

### *The Breach of Warranty Class*

Cunningham Charter argues that questions common to the class predominate in its breach of warranty class because "the question of whether Learjet fulfilled its duties under the warranty that was issued with Cunningham Charter Charter's Learjet Model 45 is an issue that is applicable to [the] proposed class as a whole" (Doc. 65, p. 15).  Cunningham Charter believes that Learjet conceded through the deposition testimony of its Director of Warranty that "all Learjet Model 45 owners were treated the same from a warranty perspective" (Doc. 65, p. 15).  As a result, Cunningham Charter believes it can "offer proof on a class-wide basis through the presentment of its individualized case" (Doc. 65, p. 15).  Yet, Cunningham Charter does not explain how this purportedly common issue predominates over the individualized issues, nor does it explain how a breach of warranty can be considered on a class-wide basis.

Learjet responds that Cunningham Charter's breach of warranty allegations potentially encompass all 4,500 parts covered under the warranty, and that proof of breach of warranty with respect to a specific part requires highly individualized inquiries.

To supports its argument that individualized questions predominate over any common questions, Learjet offers the affidavit of its Director of Warranty to describe the warranty claim process (Doc. 69, p. 12). Learjet suggests that numerous variables come into play that can alter the outcome of any given warranty claim (Doc. 69, p. 12). As an example, Learjet points out that even if two Learjet 45 owners had the same part fail during the warranty period, one owner might have its warranty claim approved while another might have its claim denied depending on the exact circumstances of each claim (Doc. 69, p. 12).

As previously discussed herein, under the terms of the Learjet 45 written warranty contained in the 1998 Specification, claims must be made within ninety days of discovery of the defect (Doc. 69, Ex. 1(A), p. 15). Whether a Learjet owner made a timely claim would be an individual question affecting the propriety of Learjet's reimbursement or rejection of the claim (Doc. 69, p. 12). Similarly, all reimbursements are contingent on the owner maintaining and making available for Learjet's investigation all maintenance and repair records for the aircraft (Doc. 69, Ex. 1(A), p. 15). Learjet may refuse to reimburse a claim if its investigation concludes that the component failure was due to the owner's fault or abuse, rather than an actual defect (Doc. 69, p. 13).

Overall, Learjet argues that Cunningham Charter has not and cannot put forward a plan or methodology for resolving breach of warranty claims on a class-wide basis. Since all 4,500 parts covered under the warranty are potentially included in the class definition, the Court would be left to conduct individualized mini-trials on the propriety of each claim denial for the entire class, which would require determining whether the claim was filed on time, whether the owner made records available for Learjet's inspection, whether the results of Learjet's investigation were appropriate given the individualized evidence, and so on (Doc. 69, p. 13).

Even ignoring the host of other problems with Cunningham Charter's proposed breach of warranty class (class definition, commonality, typicality, etc.), the class also does not satisfy the predominance requirement of Rule 23(b)(3). The common question Cunningham Charter proposes – whether a particular warranty claim should have been covered under the plain terms of the warranty – is not in any way susceptible to class-wide proof. Given that the proposed class would include every single warranty denial for every single component and that there are a slew of potential reasons for each denial, the Court would be forced to examine every denial to determine whether the claim should have been covered under the warranty.

Cunningham Charter's evidence in support of predominance – the Director of Warranty's assertion that Learjet owners with the same warranty are treated the same from a warranty perspective – does nothing to help its cause.

Two claimants may be treated the same from a warranty perspective but can still receive different warranty claim outcomes for different reasons. Cunningham Charter's proposed reading of the Director of Warranty's statement amounts to concluding that every warranty claim by every Learjet owner was submitted under exactly the same circumstances and denied for exactly the same reason. There is nothing in the record to support such a reading and it is highly counterintuitive.

Cunningham Charter's proposed breach of warranty class would require highly individualized inquiries to determine the propriety of each warranty claim denial. As a result, even if common questions exist, they do not predominate as Rule 23(b)(3) requires. In addition, these difficulties with individualized proof create intractable manageability problems, casting grave doubt on the superiority of the class mechanism for resolution of these claims. Indeed, exactly such problems have prompted the Seventh Circuit to reverse Rule 23(b)(3) classes for breach of warranty, citing commonality, predominance, and manageability concerns. *See Szabo,* **249 F.3d at 674**. Therefore, the Court finds that Cunningham Charter's proposed breach of warranty class fails to satisfy the requirements of Rule 23(b)(3).

## V. <u>CONCLUSION</u>

Both of Cunningham Charter's proposed classes suffer from a number of fatal flaws. Its proposed product liability class faces intractable choice of law and conflict of law problems that preclude certification under Rule 23(b)(3), and raise serious doubts about Cunningham Charter's adequacy as a

class representative. The proposed breach of warranty class does not satisfy either the implied prerequisites or the Rule 23(a) prerequisites. In addition, the proposed breach of warranty class presents individualized issues that predominate over any questions common to the class, precluding certification under Rule 23(b)(3). Neither class can be certified under Rule 23(b)(1)(A) because Cunningham Charter seeks only monetary relief, and individual litigation would not create the risk of incompatible standards of conduct for Learjet. Accordingly, Cunningham Charter's Motion for Class Certification (Doc. 64) is **DENIED**. The Court therefore **FINDS AS MOOT** Learjet's Motion for Oral Argument on the Issue of Class Certification (Doc. 75).

   **IT IS SO ORDERED.**

   Signed this 27th day of April, 2009.


         /s/  *David R Herndon*

         **Chief Judge**
         **United States District Court**