IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CUNNINGHAM CHARTER
CORPORATION,
Plaintiff,**

**v.**

**LEARJET, INC.,
Defendant.**                                                  No. 07 - CV - 00233 DRH

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

## I. Introduction

Before the Court is defendant Learjet, Inc.'s motion to strike the opinions of Robert Ditchey (Doc. 110) and plaintiff Cunningham Charter Corporation's response (Doc. 115). Plaintiff's amended complaint brings claims of breach of warranty, product liability, breach of contract for failure of consideration, fraudulent concealment, breach of implied duty of good faith and fair dealing, and fraud by silence arising from its purchase of a Learjet Model 45 aircraft from defendant (Doc. 128). Plaintiff's expert witness, Robert Ditchey, believes defendant's warranty agreement is inconsistent with industry standards, and he calculates plaintiff's damages for breach of warranty at over $376,575. In the instant motion to strike, defendant argues that Ditchey's testimony is not based on sufficient facts and is not the product of reliable principles and methodology as required by FEDERAL RULE OF

EVIDENCE 702. Defendant also alleges that Ditchey is not qualified. Plaintiff counters that Ditchey has nearly 50 years of experience in the airline industry, his methodology is sufficient, and his testimony will help the jury understand how defendant used language in the warranty to improperly deny coverage. The Court finds that Ditchey's testimony fails to satisfy the standard of reliability set out for expert witnesses in RULE 702 because the testimony is not based on sufficient facts and is supported only *ipse dixit* conclusions. Accordingly, the Court **GRANTS** defendant's motion to strike. Defendant's request to avoid the costs for deposing Ditchey is **DENIED**.

## II. Background

Plaintiff Cunningham Charter Corporation purchased a Learjet Model 45 business jet from defendant Learjet, Inc., in 1999 (Doc. 128, p. 2). After encountering numerous problems with the aircraft, plaintiff brought this suit for breach of warranty and product liability (Doc. 3, Ex. A, p. 3) and later amended the complaint to add claims of breach of contract for failure of consideration, fraudulent concealment of the terms and interpretation of warranty, breach of implied duty of good faith and fair dealing, and fraud by silence (Doc. 128, pp. 6–10). In support of its claims, plaintiff offers a report by expert witness Robert Ditchey (Doc. 110, Ex. A). Ditchey has over 50 years of experience in the aviation industry and is an aeronautical engineer and former pilot (Doc. 115, pp. 1–2). He negotiated and

administered warranties while at National Airlines, which had "the largest package of outside repair work in the U.S." (Doc. 110, Ex. B, 47:4–22). Ditchey, although having extensive experience in the airline industry, has never worked for a general aviation manufacturer or for a private company that operates general aircraft (*Id.* 12:2–25). And despite his experience working with warranties, Ditchey had not seen an aircraft purchase agreement or warranty document for a corporate jet before this case (*Id.* 16:25–17:9).

In preparing his report for this case, Ditchey reviewed the warranty agreement, maintenance records, and invoices (Doc. 115, p. 2). He concludes that the warranty policy was not as defendant originally claimed and that it was "so poorly written and so poorly defined that it is not possible to determine exactly what it means" (Doc. 110, Ex. A, p. 19). He calls the warranty "deficiently written, unclear, and inconsistent with industry standards" (*Id.*, p. 2). Because the warranty language is unclear, Ditchey says it allows defendant to "dictate whatever it wants to include or to exclude" (*Id.*, p. 19). For example, Ditchey points out that the warranty purports to cover labor expenses, but invoices show that defendant only reimbursed expenses at a certain "warranty labor rate" below what plaintiff had been charged. Defendant's warranty labor rate was not in the purchase agreement or the warranty policy (*Id.*, p. 2). Ditchey also faults the warranty for not defining "aircraft" or "component" and for not addressing repeated failures of the same component (*Id.*).

In addition to evaluating the warranty's language, Ditchey reviewed invoices and maintenance records to determine which claims defendant had improperly

rejected. Ditchey computes the total damages for breach of warranty at $319,804 for replacement parts and at least $56,771 for labor costs (Doc. 110, Ex. A, pp. 20–21). As to his method, he first removed invoices relating to inspections, servicing, and routine maintenance (Doc. 110, Ex. B, 91:16–92:11). Then Ditchey added up the total remaining invoices, without checking the repairs made against the warranty or checking whether the repair involved a defect (*Id.*, 130:15–135:15). He did not talk to the organizations that performed the maintenance (*Id.* 41:2–18). Ultimately he was unable to cite an instance when defendant had denied a properly submitted warranty claim: "I only looked at the invoices. I was not privy to what happened in the stream of events afterward." (*Id.*, 86:7–87:3). Ditchey agrees with defendant that there was a 90-day deadline for plaintiff to submit warranty claims to defendant; "prompt notification" was required (*Id.*, 57:23–58:3). His report observes the warranty lasted 60 months for components and 24 months for interior furnishings and exterior finishing (Doc. 110, Ex. A, pp. 8–9). Finally, the report cites the absence of records as among the reasons making it "virtually impossible" to establish a complete listing of defendant's warranty failures (*Id.*, p. 21). He therefore estimated warranty failures based on an industry standard (*Id.*).

Ditchey describes his methodology as "just like how do you value a baby's life," and "it's how many angels can dance on the head of a pin? How do you do that?" (Doc. 110, Ex. B, 135:16–136:3). Although he attested to using the same methodology before in his career, he could not provide an example (*Id.*, 136:4–16). Ditchey considers it "almost a ridiculous question" to ask whether his methodology has been

written about in articles or publications; "There's no such thing," he says (*Id.*, 136:20–25). When asked about the error rate in his methodology, Ditchey replied, "How many angels can dance on the head of a pin?" (*Id.* 137:24–138:3). Ditchey concedes that he would not expect someone else reviewing the same invoices and performing the same analysis to come up with the same numbers he did, unless they agreed on the methodology first (*Id.*, 137:1–138:9). Otherwise two or three different people would come up with two or three different answers (*Id.*).

### III. Discussion

FEDERAL RULE OF EVIDENCE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the obligation of the district court to function as a gatekeeper, ensuring that expert testimony is not only relevant but reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Bradley v. Brown*, 42 F.3d 434, 436 (7th Cir. 1994). Courts in the Seventh Circuit conduct a two-step analysis. *Chapman v. Maytag Corp.*, 297 F.3d 682, 686 (7th Cir. 2002). First, they must determine whether the expert's testimony is reliable. *See Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147

(1999)). Specifically, the testimony must have a reliable basis in the knowledge and experience of the relevant discipline, *Kumho Tire Co.*, 526 U.S. at 149 (internal quotations removed), consisting in more than subjective belief or unsupported speculation, *Chapman*, 297 F.3d at 687; *Daubert*, 509 U.S. at 590. The particular focus should remain on the principles and methodology of the testimony, not the expert's conclusions. *Chapman*, 297 F.3d at 687. Further, an expert must explain the methodologies and principles that support his opinion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). He cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Id.* (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)).

*Daubert* sets out a nonexclusive list of factors that courts may consider when assessing reliability, including whether the theory or technique (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high or known rate of error; and (4) is generally accepted in the relevant scientific community. *Kumho Tire Co.*, 526 U.S. at 149–50 (citing *Daubert*, 509 U.S. at 592–94). But there is no requirement that courts use each of the factors, because the gatekeeping inquiry is flexible and must be "tied to the facts" of the particular case. *Id.* at 150 (quoting *Daubert*, 509 U.S. at 591); *see also Chapman*, 297 F.3d at 687. Further, a district court enjoys "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141. Although the Supreme Court was addressing scientific experts in *Daubert*, the same principles apply to all expert testimony. *Id.*

at 147.

In the second step of the analysis, courts must determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Chapman*, 297 F.3d at 687; *Daubert*, 509 U.S. at 592. It is crucial that the expert "'testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001)(quoting *Ancho v. Penteck Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)).

## IV. Analysis

In the current motion, defendant argues that Ditchey's testimony does not meet the requirements of FEDERAL RULE OF EVIDENCE 702 because it is not based on sufficient facts or data; it is not the product of reliable principles and methods; and Ditchey has not applied his principles and methods reliably to the facts (Doc. 110, pp. 1–3). In addition, defendant claims Ditchey is not qualified because his experience in the aviation industry does not include experience with "general" aircraft like the Learjet 45 (Doc. 110, p. 12).

Regarding the last point, the Court finds that Ditchey is qualified. Defendant claims Ditchey has no experience with general aircraft or their warranties, making him unqualified to offer opinions on the Learjet 45. In response, plaintiff says this criticism merely goes to the weight of the testimony, not to its admissibility (Doc. 115, p. 6). Defendant nowhere explains a difference between general aircraft or

general warranties and those Ditchey has worked with in his career. Ditchey has many years of experience in the aviation industry, including the negotiation of warranties and contracts. Thus the Court agrees with plaintiff that Ditchey's qualifications are not an issue. Defendant's other arguments go to the reliability of Ditchey's testimony, and the Court will discuss them in turn.

**A. <u>Sufficient facts or data</u>**

Defendant charges that Ditchey's testimony is not reliable because it is not based on sufficient facts or data. Defendants says Ditchey has neither seen the Learjet 45 at issue nor compared defendant's warranty with warranties covering similar general aircraft. He did not talk to the organizations that performed the maintenance in this case. And he did not review the history of any individual warranty claim to see whether the conditions for a warranty claim were met. Further, defendant notes that Ditchey was unable to cite an instance when defendant had denied a properly submitted warranty claim. Ditchey only reviewed invoices and maintenance records, which defendant claims is insufficient because determining whether an expense is reimbursable under warranty would require identifying the defect in the part, whether the claim was timely submitted, and whether the part was ever returned to defendant (Doc. 110, p. 7).

Plaintiff responds that Ditchey "reviewed stacks of invoices" and removed charges involving routine maintenance from consideration (Doc. 115, p. 3). Plaintiff states that Ditchey should be entitled to rely on his 50 years of experience with

warranties in his review the warranty language and in determining which repairs should have been covered (Doc. 115, p. 7). On whether Ditchey should have inquired into the timely submission of claims and whether the claims were submitted to an authorized representative of defendant, plaintiff says "Ditchey was not asked to review these issues" (Doc. 115, p. 8). According to plaintiff, defendant's procedures for submitting claims are unenforceable and inapplicable (Doc. 115, p. 8).

In assessing whether an expert's testimony is based on sufficient facts or data, "[i]t is critical . . . that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F. 3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.* (quoting *Gen. Elec. Co.*, 522 U.S. at 146).

Here, the Court agrees that Ditchey did not base his analysis on sufficient facts or data. By totaling invoices and removing routine maintenance events, Ditchey arrived at $319,804 in damages for replacement parts and at least $56,771 for labor costs. But he admits to gaps in his data. When asked whether defendant denied any proper, timely warranty claims, Ditchey could not answer. He conceded that he had only looked at the invoices and "was not privy to what happened in the stream of events afterward." His report cites the absence of records, among other reasons, as making it "virtually impossible" to establish a complete listing of defendant's

warranty failures. He therefore had to estimate warranty failures based on an industry standard, which he does not explain. But an expert must explain the methodologies and principles that support his opinion. *Metavante Corp.*, 619 F.3d at 761. Ditchey has merely made bottom line or *ipse dixit* conclusions.

Additional gaps in the data are not explained. Ditchey did not talk to the organizations that performed the maintenance to find out how they submitted the claims to defendant. Plaintiff says defendant's procedures for submitting claims, including timeliness, are unenforceable and inapplicable, and that Ditchey was not asked to review them. This is hardly persuasive. Ditchey was aware of defendant's 90-day deadline for the submission of claims. Prompt notification, he agrees, was a requirement. He also notes that the warranty was limited to 60 months for components and 24 months for interior furnishings and exterior finishing. Yet timeliness was not factored into his analysis. Ditchey's conclusion appears to be that all invoice amounts other than routine maintenance should have been covered without regard to when the claims were submitted. Thus the Court finds there is not a sufficient link between the data that Ditchey worked with and his conclusions about total damages.

**B. Product of reliable principles and methods**

Much of defendant's argument repeats the ones above. Defendant says Ditchey's opinions are not the product of reliable principles and methodology but are assumptions and personal speculations (Doc. 110, p. 9). Plaintiff responds that the

*Daubert* factors do not apply to expert testimony based on professional experience (Doc. 115, pp. 6–7). Because of Ditchey's experience, plaintiff says it is common sense that he can review the warranty's language and determine which invoices should have been covered (Doc. 115, p. 7). Plaintiff compares Ditchey's review with the visual inspection of an engine by a mechanic or engineer, citing the First Circuit case *Correa v. Cruisers, a Div. of KCS Int'l, Inc.*, 298 F.3d 13, 26 (1st Cir. 2002).

First, contrary to plaintiff's assertion, the Daubert factors can be applied to testimony based on professional experience. *See Kumho Tire Co.*, 526 U.S. at 147. Even so, the *Daubert* factors do not seem helpful with these particular facts. They might have supported admission of Ditchey's testimony; for instance, had there been an article published about his methodology or if it were generally accepted in the community. But lack of testing or a known error rate do not sway the Court one way or the other.

Nevertheless, the Court agrees with defendant that Ditchey's testimony is not the product of reliable principles and methods. In his deposition, Ditchey made the following comment on his methodology:

> Q: Okay, and are you going to testify . . . that Mr. Cunningham has suffered damages as a result of breach of warranty, in the amount of $376,694.30?
> A: I would say that under the methodology that I'm using, yes. That is—it's just like how do you value a baby's life. I have to start with something and forced to put a dollar value on it. It's as good as anything just to take the face value of the invoice, and say that's it.

(*Id.*, 135:12–25). This and other similar statements make clear that Ditchey was

speculating and giving only *ipse dixit* conclusions. His method sounds almost arbitrary.

With reference to *Correa v. Cruisers*, it may indeed be common sense that a mechanic can rely on observation. In *Correa*, the witness visually inspected an engine, observed excessive smoke, and looked at the appearance of a spark plug. *Correa*, 298 F.3d at 26. The court found it a matter of common sense that such a visual inspection by a mechanic would be an acceptable way to diagnose engine or fuel-management problems. *Id.* The court also noted that another expert offered support for the methodology used. *Id.* Here it is not obvious that an expert can determine from a stack of invoices whether the maintenance events should have been covered by a warranty agreement. And, unlike in *Correa*, there is no other expert to vouch for Ditchey's methodology. Indeed Ditchey himself was skeptical that anyone else would arrive at the same damages estimate he did, unless they first agreed to the same methodology that Ditchey used. He thought that two or three different people would come up with two or three different answers. Certainly this implies that his own methodology is not one he would expect another expert to use as a matter of common sense. Thus Ditchey's explanation and the lack of other expert support—as well as the colorful comparison to angels dancing on the head of a pin—do not suggest a reliable basis in the knowledge and experience of his discipline.

Having concluded that Ditchey's testimony is not the product of reliable principles and methods, the Court need not discuss whether Ditchey applied his principles and methods reliably to the facts.

## C. Assist the trier of fact

The second step of analysis is to determine whether the testimony would assist the trier of fact in understanding the evidence or in determining a fact in issue. In addition to the reasons given above, the Court concludes that Ditchey's testimony would not assist the trier of fact inasmuch as it is largely an attempt to construe contractual language. For instance, Ditchey says the warranty was "so poorly written and so poorly defined that it is not possible to determine exactly what it means." Ditchey also faults the warranty for not defining "aircraft" and not addressing repeated failures of the same component. But "interpretation of contracts is for the judge." *Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 564 F.3d 817, 819 n.† (7th Cir. 2009); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir.1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony"). Consequently, Ditchey's testimony is not only unhelpful to the trier of fact, it must be excluded because it encroaches on the province of the Court and the jury.

## D. Deposition costs

Defendant also moves to disallow plaintiff from recovering expenses involved in deposing Ditchey. Since Ditchey's testimony is being excluded, defendant says manifest injustice would result if it is required to pay the deposition expenses (Doc. 110, p. 13). In a footnote, defendant cites *Gwin v. American River Transportation Co.*, 482 F.3d 969 (7th Cir. 2007) and *Rogers v. Penland*, 232 F.R.D. 581 (E.D. Tex.

2005), but otherwise makes no argument. Plaintiff has not actually moved to recover deposition expenses. Plaintiff responds that *Gwin* stands for the opposite of defendant's assertion; *Gwin* found that the district court had abused its discretion in denying a motion to recover expert's expenses (Doc. 115, p. 10).

The FEDERAL RULES OF CIVIL PROCEDURE provide, "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (I) pay the expert a reasonable fee for time spent in responding to discovery . . . ." FED. R. CIV. PRO. 26(b)(4)(E). "In other words, before refusing to order a deposing party to pay the other party's expert, the district court must explicitly find either manifest injustice or that the fee was unreasonable." *Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 975 (7th Cir. 2007).

Defendant has not sufficiently explained why the circumstances here might result in manifest injustice. RULE 26(b)(4)(E) and *Gwin* are clear that the deposing party is, in most circumstances, required to pay the expert a reasonable fee. Plaintiff has not actually filed a motion for fees. When it does, the Court will most likely grant it unless defendant can show explicitly how manifest injustice would result or that the fee is unreasonable.

### V. Conclusion

The Court finds that the proposed testimony fails to satisfy the standard for reliability set out for expert witnesses in RULE 702 and hereby **GRANTS** defendant's

motion to strike the opinions of Robert Ditchey (Doc. 110). Defendant's request to avoid the costs for deposing Ditchey, however, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 22nd day of April, 2011.

*David R Herndon*

Digitally signed by
David R. Herndon
Date: 2011.04.22
15:10:24 -05'00'

**Chief Judge
United States District Court**