# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CUNNINGHAM CHARTER CORPORATION,**
**Plaintiff,**

**v.**

**LEARJET, INC.,**
**Defendant.**                                              No. 07 - CV - 00233 DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is defendant Learjet, Inc.'s motion for partial summary judgment (Doc. 99), with plaintiff Cunningham Charter Corporation's response (Doc. 111) and defendant's reply (Doc. 114). After the motion was filed, plaintiff amended its complaint. Plaintiff now claims breach of warranty, products liability, breach of contract, fraudulent concealment, breach of implied duty of good faith and fair dealing, and fraud by silence, all arising from its purchase of a Learjet Model 45 aircraft from defendant (Doc. 128).

The instant motion attacks the products-liability and fraud claims. Defendant first argues that products liability is barred under Kansas law by the economic-loss doctrine. Second it argues that plaintiff's allegation of fraud should be dismissed because it was not pleaded with particularity under Federal Rule of Civil Procedure

9(b) and Illinois law.[1] The Court agrees with defendant that plaintiff's claim of products liability is barred. Therefore, defendant is entitled to judgment as a matter of law on that claim. As to fraud, however, plaintiff's amended complaint pleads enough particularity under federal procedural rules. Accordingly, defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## II. Background

William R. Cunningham, as the former CEO of Transcraft Corporation, was in the market for a new jet aircraft. He nearly purchased one from Cessna Aircraft Company, giving Cessna a $100,000 nonrefundable down payment. Then defendant Learjet, Inc., lured Cunningham away from Cessna with the new Learjet Model 45. Defendant's overtures focused on the aircraft's superior quality and warranty coverage. Defendant gave Cunningham a document called the "Learjet 45-140 Proposal Summary" ("Proposal"), which described the general terms of the warranty, calling it "outstanding" and "most comprehensive," and saying it included both parts and labor (Doc. 128, ¶ 34 & Ex. 1, p. 6). The Proposal was effective through January 31, 1999, and on that date the parties agreed to the purchase and signed an Airplane Purchase Agreement ("APA") (Doc. 128, Ex. 2). Transcraft forfeited its $100,000 deposit to Cessna and later assigned its interest in the Learjet Model 45 to plaintiff.

---

[1] Defendant suggests at one point that it should be entitled to judgment as a matter of law at to fraudulent concealment because it disclosed all the warranty terms to plaintiff (Doc. 99, p. 6). However, defendant omits this argument from its brief.

Defendant allegedly received notice of at least 25 windshield failures in the Learjet Model 45s after the APA was signed and before the aircraft was delivered. Just before delivery and acceptance of the aircraft, defendant made the aircraft available to plaintiff for inspection and a test flight so plaintiff could check for defects, but defendant did not disclose to plaintiff its knowledge of the windshield failures at that time. Defendant delivered the aircraft to plaintiff on April 24, 2000, and accepted the final $7 million payment, again without disclosing its knowledge of windshield failures.

Since taking possession of the aircraft, plaintiff has had numerous problems, particularly with the windshields. Two failed during flight. During the warranty period, defendant replaced windshields but did not repair them. In the last three failures, defendant denied warranty coverage, and plaintiff paid $48,000 per windshield to replace them. Between January 1999–April 2005, over 100 Learjet Model 45s experienced at least 200 windshield failures. Plaintiff also asserts that the batteries were defectively designed.

In addition, plaintiff began incurring charges it believes should have been covered by the warranty. Plaintiff asked defendant about its warranty coverage, and Sales Support Administrator Spencer Bain responded by fax on February 19, 2002, confirming the same warranty terms as were in the Proposal (Doc. 128, Ex. 5).

The Proposal says the warranty covers parts and labor for 60 months on airframe and Learjet-manufactured components, avionics, and vendor-supplied items; but for 24 months on interior furnishings and exterior finishing.

But defendant claims that the actual warranty is described in section 12 of a separate document, the Specification & Description (Doc. 128, Ex. 6). There are several differences between the Proposal and section 12. For instance, section 12 requires 90 days' notice for warranty claims. It also specifies that repair work must be done by defendant or an authorized representative. Plaintiff alleges it was never given the section-12 warranty (Doc. 128, ¶ 40).

This case was originally filed as a class action and removed to federal court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The classes were not ultimately certified, but federal diversity jurisdiction is retained under the Act. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (2010). Both parties are incorporated in Delaware. Plaintiff's principal place of business is in Illinois; defendant's is in Kansas. The APA says "This Agreement shall be governed by and interpreted in accordance with the laws of the State of Kansas" (Doc. 128, Ex. 2, p. 3).

### III. Discussion

#### A. Products Liability

Defendant first discusses choice of law in this diversity action. Defendant submits that it does not matter to the outcome whether Kansas or Illinois law applies to the products-liability claim. If there is a difference, defendant believes Kansas law should govern, in part because the parties agreed to that in the APA. Plaintiff agrees, at least implicitly, by applying Kansas law in its response. Plaintiff does not otherwise

discuss choice of law.

When a federal court hears a case in diversity, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, the Court would ordinarily follow Illinois choice of law to decide whether the choice-of-law provision in the APA controls and, consequently, which state's law of products liability applies. However, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Moreover, failure to raise the issue can be considered a waiver. *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1115 n.6 (7th Cir. 1995). Here, the parties do not disagree on which state's law applies. They also agreed to Kansas law in the APA. The Court will therefore apply the substantive law of Kansas to the products-liability claim.

Defendant argues that plaintiff's products-liability claim must be dismissed because plaintiff's damages are purely economic. That is, any property damage or injury was only to the goods themselves. Consequently, a recovery under products liability is not permitted and defendant should be entitled to summary judgment.

Summary judgment is proper where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123

F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323).

Kansas follows Supreme Court case *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986) in not allowing products-liability claims, whether based on negligence or strict liability, when only the products themselves are damaged. *Koss Const. v. Caterpillar, Inc.*, 960 P.2d 255, 260 (Kan. App. 1998); *Nw. Ark. Masonry, Inc., v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 987 (Kan. App. 2001). "Damage to a product itself is most naturally understood as a warranty claim." *Koss Const.*, 960 P.2d at 258 (quoting *East River*, 476 U.S. at 872). On the other hand, the rationale behind products liability is to give people "more protection from dangerous products than is afforded by the law of warranty." *Id.* (quoting *East River*, 476 U.S. at 866). The court in *Koss Construction* rejected an attempt to carve out an exception when the product at issue is either damaged in a calamitous event or unreasonably dangerous, saying "[r]egardless of how it occurs, damage which is limited to the product itself is essentially economic loss." *Id.* at 260.

Here, plaintiff has not claimed any damage other than to the windshields and batteries themselves. Plaintiff suggests at one point the entire aircraft is the defective product, then later calls the windshields the "focal point" of its product-defect claims (Doc. 111, p. 5). "[T]here can be no question that the product defect at issue—the defective windshields—repeatedly caused extensive and expensive damage to the airplane—namely those windshields, which cost approximately $48,000.00 a piece to replace" (*id.*, p. 7). Whether it is the entire aircraft, the windshields, or the batteries, however, as explained above a products-liability claim is not available when

only the products themselves are damaged.

Two windshields did fail during flight, so plaintiff believes this is also a safety issue; someone could be injured or killed. For that reason plaintiff urges the Court to apply *Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, which permitted recovery in strict liability for damage to the defective product itself when the product was "unreasonably dangerous." 535 F. Supp. 118, 126 (D. Kan. 1982). But this line of argument "presumes, incorrectly, that *Fordyce* is controlling authority. It is not." *Koss Const.*, 960 P.2d at 259. Kansas law does not recognize an exception to economic loss for unreasonably dangerous products. "Regardless of how it occurs, damage which is limited to the defective product itself is essentially economic loss." *Id.* at 260. Plaintiff acknowledges that *Fordyce* may have been overruled and argues, in the alternative, that the Court should follow *Fordyce*'s reasoning to prevent injury or death. But the reason for barring such products-liability claims is that a recovery is already available under breach of warranty. *East River*, 476 U.S. at 873 ("[W]arranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain.").

The Court finds that plaintiff's products-liability claim must be dismissed because any damages were only to the windshields and batteries themselves. Consequently, defendant is entitled to judgment as a matter of law.

**B. Fraud**

Even though this motion is styled a motion for partial summary judgment,

defendant makes only two points, both pertaining to pleading. Defendant first argues that plaintiff did not plead fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b), there being no "who, what, when, where, and how" the fraud occurred. Second, defendant says plaintiff does not plead the elements of fraud with specificity under Illinois law. Defendant does not adduce evidence or claim it is entitled to judgment as a matter of law. Accordingly, the Court will treat this argument as a motion to dismiss under Rule 12(b)(6). Plaintiff responds as if to a motion for summary judgment, asserting genuine issues of fact and applying Illinois law. In the alternative, plaintiff asks for leave to amend its complaint.

As defendant observes, plaintiff originally had pleaded fraud, at best, by implication (Doc. 99, p. 17). Then after filing its response, plaintiff amended its complaint under Rule 15(a), with leave from the Court, and added explicit counts of fraudulent concealment and fraud by silence. So neither defendant's motion nor plaintiff's response refers to the latest allegations in the amended complaint. Nevertheless, for the reasons below, the Court finds that the amended complaint pleads fraud with sufficient particularity under Rule 9(b).

Defendant's second argument claims that plaintiff fails to plead the elements of fraud with particularity as required under Illinois law. But defendant does not explain its use of Illinois law after recommending Kansas law for the products-liability issue. Nor does plaintiff. And Kansas law was clearly within the expectation of both parties when they contracted; they expressly chose it to govern the APA. In the future, the parties should give reasons for any departures from Kansas law.

But because this is essentially a motion to dismiss under rules 12(b)(6) and 9(b), the Court must apply the federal pleading standard for fraud. When a federal court has diversity jurisdiction, as here, state law governs substantive issues and federal law governs procedure. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010); *Windy City Metal v. CIT Tech.*, 536 F.3d 663, 670 (7th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Further, "[i]t is well settled that a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than federal law.'" *Windy City*, 536 F.3d at 670 (quoting *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002)); *accord Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006) (applying Rule 9(b) pleading standard, including the general pleading of knowledge and other conditions of mind, to claim of aiding and abetting fraud under Illinois law); *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (applying Rule 9(b) to Illinois Consumer Fraud and Deceptive Business Practices Act claim).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, " FED. R. CIV. P. 8(a)(2), and be "sufficient to provide the defendant with 'fair notice' of the claim and its basis" so that the defendant can begin to investigate and defend against the claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081, 1085 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court reviews motions to dismiss in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the plaintiff's favor. *Tamayo*, 526 F.3d at 1081; *see also Pirelli*

*Armstrong*, 631 F.3d at 447; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Any documents attached to the complaint are part of the complaint and may be considered on a motion to dismiss. *Reger Dev., LLC v. Nat'l City Bank*, 593 F.3d 759, 764 (7th Cir. 2010).

Since allegations of fraud can do great harm to a business's reputation, plaintiffs making such charges must meet the heightened requirements of Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (particularity requirement of Rule 9(b) designed to discourage a "sue first, ask questions later" philosophy (quoting *Berman v. Richford Indus., Inc.*, 1978 WL 1104, at *5 (S.D.N.Y. July 28, 1978))).

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). This means pleading the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Borsellino*, 477 F.3d at 507. Yet courts should not be "overly rigid" about what information is required; it will vary depending on the facts of the case. *Pirelli Armstrong*, 631 F.3d at 442. And even though Rule 9(b) requires pleading with particularity, "courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli Armstrong*, 631 F.3d at 443 (citing *In re Rockefeller Center Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Finally, although conditions of mind may be alleged generally under Rule 9(b), the complaint "must still afford a basis for believing that plaintiffs could prove scienter." *DiLeo*, 901 F.2d at 629*; Tricont'l Indus. v. Pricewaterhousecoopers*, 475 F.3d 824, 833 (7th Cir. 2007) (internal quotation omitted).

Here, the *who* and *what* of the alleged fraud consist primarily of the Proposal given to William Cunningham during the parties' negotiations without the section-12 warranty. The amended complaint does not say who wrote the Proposal or who gave it to Cunningham, but it was written and prepared for plaintiff by someone in defendant's organization. This gives defendant fair notice so that it can investigate and defend against the claim. Defendant can readily trace who was responsible for both the Proposal and the section-12 warranty. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 794–95 (7th Cir. 2004) (plaintiff's failure to identify who made alleged misrepresentations was cured by the addition of an email account, "Corporate Communications Mailbox," used by defendant). The *when* is approximated by the Proposal's effective date of January 31, 1999, which is also when the APA was signed. It is also when defendant made the aircraft available for inspection and a test flight, just before delivery and acceptance of the aircraft on April 24, 2000. The *where* is not stated specifically, although that does not seem fatal to plaintiff's claim by itself.

Similar to the above, salesperson Spencer Bain (*who*) confirmed by fax (*where*) that defendant's warranty terms were in the Proposal, without mentioning section 12 (*what*) on February 12, 2002 (*when*). Plaintiff had already purchased the

aircraft by that time, but Bain's fax may have caused plaintiff additional damages if it led to missed notification deadlines or other improperly submitted claims.

The *how* of the alleged fraud is in the discrepancies between the Proposal and the section 12, which led to denials of warranty claims. Plaintiff alleges it was not given the section-12 warranty, a fact which the Court accepts as true at the pleading stage. *Tamayo*, 526 F.3d at 1081. The Proposal does not say anything about giving defendant notice; section 12 includes a 90-day notice requirement. The Proposal states that the warranty includes labor; section 12 specifies that labor must be performed either by defendant or by an authorized representative. The *how* is also defendant's silence about problems with the windshields. Plaintiff believes it was damaged by defendant's actions because it would either have rescinded the APA, insisted on permanent repairs to the windshields, or negotiated for repairs to the windshields beyond the five years of warranty coverage.

The Court finds that the amended complaint affords some basis for believing plaintiff could prove scienter as well. Namely, plaintiff alleges that defendant had notice of multiple windshield failures with the Learjet Model 45s, but did not disclose that knowledge to plaintiff at the time of the test flight or later at delivery. There were also many windshield failures between January 1999–April 2005, but defendant merely replaced plaintiff's windshields during that time and did not repair them.

The Court concludes that plaintiff's allegations that defendant concealed the section-12 warranty and remained silent about known windshield defects state circumstances constituting fraud with particularity. Defendant's motion is denied.

## IV. Conclusion

As discussed above, the Court hereby **GRANTS IN PART AND DENIES IN PART** defendant's motion for partial summary judgment (Doc. 99). Defendant is **GRANTED** summary judgment as to plaintiff's products-liability claim, which is hereby **DISMISSED WITH PREJUDICE**. However, defendant's motion to dismiss plaintiff's allegations of fraud is **DENIED**.

**IT IS SO ORDERED.**

Signed this 5th day of July, 2011.

Digitally signed by David R. Herndon
Date: 2011.07.05 11:55:31 -05'00'

**Chief Judge**
**United States District Court**