IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CUNNINGHAM CHARTER**
**CORPORATION,**

    Plaintiff,

v.　　　　　　　　　　　　　　　　No. 07-cv-233-DRH-DGW

**LEARJET, INC.,**

    Defendant.

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.  INTRODUCTION

Before the Court is the resolution of whether Kansas or Illinois law governs Count IV, fraudulent concealment, and Count VI, fraud by silence, of plaintiff's first amended complaint (Docs. 158, 159). For the following reasons, the Court Orders that Kansas law shall govern plaintiff's fraudulent concealment and fraud by silence claims.

### II.  PROCEDURAL BACKGROUND

The Court presumes general familiarity with the underlying proceedings. Relevant to the instant dispute, plaintiff's first amended complaint initially alleged various breach of contract, fraud, and product liability claims arising from plaintiff's purchase and defendant's delivery of the Learjet 45-075 aircraft (Learjet 45). Specifically, plaintiff alleged: Count I, breach of contract: warranty

obligations; Count II, product liability claim; Count III, breach of contract: failure of consideration; Count IV, fraudulent concealment: terms and interpretation of warranty; Count V, breach of contract: implied duty of good faith and fair dealing; and Count VI, fraud by silence. However, on July 5, 2011, the Court granted summary judgment in favor of defendant on plaintiff's product liability claim as barred under Kansas' economic-loss doctrine. Notably, it denied summary judgment as to plaintiff's allegations of fraudulent concealment and fraud by silence, as plaintiff pled its allegations with the requisite particularity under the federal rules (Doc. 142). [1]

Preliminarily, the Court noted the parties did not dispute the applicability of Kansas law to defendant's motion for summary judgment on plaintiff's product liability claim. The Court presumed the lack of controversy was due in part to the substantial similarity of the applicable Kansas and Illinois laws. Thus, as the parties did not dispute the applicability of Kansas law, the Court did not engage in the general analysis employed by courts sitting in diversity. Meaning, the Court did not analyze the choice-of-law rules of the forum state; Illinois. Accordingly, prior to the instant dispute, the parties had not requested a ruling from the Court as to whether the choice-of-law provision in the Airline Purchase Agreement (APA), which holds Kansas law controls the interpretation of the contract, instantly controls plaintiff's fraud-based claims; Counts IV and VI (*See* Doc. 128-

---

[1] The Court noted it applied the federal rules, as opposed to Kansas law, in analyzing defendant's motion for summary judgment as to plaintiff's fraud claims, as defendant did not in fact seek summary judgment, but dismissal based on the alleged inadequacies of plaintiff's pleadings under the federal rules.

2, p. 3). Thus, at the final pretrial conference held on October 11, 2011, the Court requested the parties brief the applicability of Kansas and Illinois law to the instant substantive issues. As both parties have timely filed briefs (Docs. 158, 159) and response briefs (Docs. 161, 162), the issue is ripe for resolution.

### III.   ARGUMENT AND ANALYSIS

Defendant argues Kansas law should apply to all substantive issues, not only plaintiff's breach of contract claims. In support, defendant states plaintiff's fraud-related counts are dependent on the APA choice of law clause. Additionally, defendant cites the "most significant relationship" analysis Illinois courts employ when determining choice of law disputes. As defendant alleges the relevant contacts center on Kansas, Kansas law should equally apply to both plaintiff's fraud and contract claims.

Generally, plaintiff argues the APA choice of law provision does not apply to plaintiff's fraud-based claim, as the parties did not intend its application to tort claims and plaintiff's fraud claims are not dependent on the contract. As plaintiff argues the APA choice of law provision does not apply to its fraud-based tort claim, similarly to defendant, it looks to the "most significant relationship" test under Illinois' choice of law rules to determine the applicability of Kansas or Illinois law to its fraud by silence claim. Predictably, in opposition to defendant, plaintiff determines the weight of the contacts dictate Illinois law applies to its fraud by silence claim.

As an initial matter, the Court must clarify the specific issues addressed in the instant Order. Importantly, plaintiff's initial brief requests that the Court find Illinois law applicable to its Count VI, fraud by silence claim (Doc. 159). Thus, plaintiff does not mention Count IV, fraudulent concealment: terms and interpretation of warranty. However, without expanding its argument to encompass the specific allegations of Count IV, plaintiff's response to defendant's choice of law brief requests that the Court find Illinois law applicable to both its Count IV, fraudulent concealment, and VI, fraud by silence, claims (Doc. 161). Accordingly, the Court instantly addresses the applicability of Kansas or Illinois law to both Count IV and Count VI. Although the causes of action are materially similar, the underlying conduct alleged is inherently different. Therefore, the Court must examine the two counts separately.

Accordingly, the Court must first analyze whether the APA choice of law clause applies to plaintiff's fraudulent concealment and/or fraud by silence claims. In the event the choice of law clause does not apply, the Court will then determine whether the weight of the parties' contacts relevant to the disputed issues favor the application of Kansas or Illinois law.

    a. **Application of the APA Choice of Law Clause**

A federal court sitting in diversity must apply the "substantive" state law of the forum. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Conflicts of law questions are

substantive for purposes of the *Erie* doctrine. *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Thus, a federal court must apply the forum state's law regarding conflicts of law when determining the applicability of a choice of law clause. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987); *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985).

Instantly, the parties have agreed that Kansas law applies to the interpretation of the relevant agreement; thus, plaintiff's breach of contract claims. However, the parties dispute the application of the APA choice of law provision to plaintiff's fraud-related claims; Counts IV and VI. Accordingly, the Court must apply the conflict of law rules of Illinois in determining whether the instant choice of law clause applies to the entirety of plaintiff's claims.

Under Illinois law, choice of law provisions generally apply to disputes arising from a valid contract. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) (applying Illinois law) ("In disputes such as this one that arise from a contract, Illinois law respects the contract's choice-of-law clause as long as the contract is valid.").

Illinois courts follow the recommended analysis of section 187 of the Restatement (Second) of Conflict of Laws in determining whether to apply the parties' selected governing law. *Newell Co. v. Petersen,* 758 N.E.2d 903, 922 (Ill. App. Ct. 2001) (citing Restatement (Second) of Conflict of Laws § 187 (1971)). Thus, under Illinois law, a court shall apply a choice of law clause provided 1) it

does not contravene the state's fundamental public policy, and 2) the state bears a reasonable relationship to the parties or transaction. *Id.*; *see also DeValk*, 811 F.2d at 330 ("A federal court sitting in Illinois, therefore, should honor a contractual choice of law clause specifying Michigan law as controlling, unless the applicable Michigan law is dangerous, inconvenient, immoral, or contrary to public policy.").

Neither party contends that Kansas law contravenes a fundamental public policy of Illinois, nor that Kansas does not bear a reasonable relationship to the parties or transaction. The instant dispute centers on the scope of the APA choice of law clause, as plaintiff casts its fraud-related claims as tort claims not based upon the relevant contract. Thus, plaintiff argues Kansas law applies solely to its breach of contract claims and not its claims for fraudulent concealment or fraud by silence.

Notably, neither Illinois courts nor the Seventh Circuit interpreting Illinois law have directly addressed the application of a contractual choice of law clause to tort claims. However, the Seventh Circuit has noted, in reliance on circuit court opinions interpreting the laws of various states, that district courts sitting in diversity should not apply contractual choice of law clauses to tort claims unless it is clear that the parties intended its application to tort claims. *See Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997) (applying Wisconsin law) ("One can, it is true, find cases that say that contractual choice of law provisions govern only contractual disputes and not torts… But what the

cases actually hold is that such a provision will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended.") (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (applying New York law); *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 432-33 (5th Cir. 1996) (applying Texas law); *Caton v. Leach Corp.*, 896 F.2d 939, 942-43 (5th Cir. 1990) (applying Texas law)); *see also Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 987 (7th Cir. 2005) (applying Wisconsin law). Further, as Illinois follows section 187 of the Restatement (Second) of Conflict of Laws, the Court believes Illinois courts would generally agree with the above statement, as Section 187(2) provides for the application of, "[t]he law of the state chosen by the parties to govern their *contractual rights and duties*." Restatement (Second) of Conflict of Laws § 187(2). Thus, while the instant choice of law clause indisputably applies to plaintiff's claims arising out of the parties' contractual rights and duties, the Court must determine whether plaintiff's fraud-based claims fall into the category of "contractual rights and duties."

Again, the Court notes that neither the Seventh Circuit interpreting Illinois law nor Illinois courts have addressed the relevant factors applicable to the determination of whether the parties intended a contractual choice of law clause's application to tort claims. However, numerous Illinois district courts have addressed the issue and determined the relevant inquiry is twofold, focusing on the language of the clause and the subject claim's contractual dependence. *Medline Indus. Inc. v. Maersk Medical Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill.

2002); *see also Custom Foam Works, Inc. v. Hydrotech Sys., Ltd.*, 09-cv-0710, 2011 WL 1102812, *2 (S.D. Ill. Mar. 23, 2011); *Facility Wizard Software, Inc. v. Southeastern Technical Servs., LLC,* 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009); *LaSalle Bank Nat'l Assoc. v. Paramount Props.*, 588 F. Supp. 2d 840, 849 (N.D. Ill. 2008); *Amakua v. Dev. LLC v. Warner.* 411 F. Supp. 2d 941, 956 (N.D. Ill. 2006). While the aforementioned orders are not binding on this Court, the factors they endorse are relevant to the instant inquiry as a matter of common sense. Thus, the Court will apply their reasoning to the instant dispute.

First, courts should examine, "the breadth and language of the Choice-of-Law Clause to determine whether the parties intended the Choice-of-Law Clause to govern all claims between them." *Medline,* 230 F. Supp. 2d at 863. Courts should consider, "whether the language of the provision encompasses all rights and liabilities arising out of the transaction or solely the construction of the contract." *Id.* at 862 (citation omitted). Second, the court must determine whether the tort claims are dependent on the contract. *Id.* at 863. In making a determination as to dependence, "courts examine whether the action alleges a wrong based upon interpretation and construction of the contract, or whether the claim alleges elements constituting an independent tort." *Id.* (citations omitted). Further, regardless of the language of the choice of law clause, if the claim is dependent upon the contract then the choice of law clause governs that claim. *Id.* at 862. Finally, if a court determines the choice of law provision is inapplicable to

the tort claim, it shall apply the choice of law rules of the forum to determine which jurisdiction's substantive law applies. *Id.* at 862-63.

### i. Language of the APA Clause

The APA choice of law clause states, "[t]his Agreement shall be governed by and interpreted in accordance with the laws of the State of Kansas" (Doc. 128-2, p. 3). As plaintiff argues, this language closely mirrors that of the clause at issue in *Amakua*, as it stated, "[t]his Agreement will be governed and construed in accordance with the laws of the State of California." *Amakua*, 411 F. Supp. 2d at 955. The court compared the aforementioned language with more broadly stated choice of law provisions; specifically, the language "all claims 'arising out of' or 'relating to' the contract," will be governed and construed in accordance to the law of a particular state or country. *Id.* at 955-56 (citation omitted); *see, e.g. Medline*, 230 F. Supp. 2d at 863 (comparing broader "arising out of" language with restrictive language in the clause at issue that the "agreement shall be subject to English law"); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) ("all disputes the resolution of which arguably depend on the construction of an agreement "arise out of" that agreement for purposes of an arbitration clause... We cannot imagine why the scope of that phrase would differ for purposes of a forum-selection clause."). Given the "relatively restrictive" language used, the court held the clause did not indicate the parties' intent that California law apply to tortious conduct. *Id.* at 956.

In reliance on *Amakua*, plaintiff argues the restrictive language of the instant clause demonstrates the parties similarly did not intend its application to all claims arising between the parties, as it solely relates to the construction and interpretation of the contract. The Court finds plaintiff's reasoning persuasive, as the clause does not indicate the parties intended its governance of all claims, as it does not mention "claims" or "disputes" and is narrowly written. Similarly to the Seventh Circuit's reasoning in *Kuehn*, had the parties wanted to "spare [themselves] the uncertainty of having to defend under the law of a different state," they merely needed to "specify clearly and comprehensively" that they would apply Kansas law to torts as well as contract disputes. *Kuehn*, 119 F.3d at 1303. However, the parties chose not to do so. Thus, the language does not indicate the intent that Kansas law apply to the instant fraud-related claims. However, as defendant points out, the breadth of the language is not determinative. Thus, the Court must consider whether the fraud-related claims in Counts IV and VI are dependent upon the contract.

### ii. Dependence on the Contract

A tort claim is "dependent" upon the contract if "(1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Amakua*, 411 F. Supp. 2d at 955. Thus, fraud-related claims are generally dependent upon the contract provided

the allegedly fraudulent statements were made in the agreement or were clearly closely related to the agreement. *Id.* at 956.

### b. Kansas Law Governs Count IV

Count IV, fraudulent concealment: terms and interpretation of warranty, alleges that defendant represented in a proposed agreement that its "outstanding warranty" included both parts and labor.[2] Plaintiff further alleges following its purchase and defendant's delivery of the Learjet 45, defendant confirmed the binding warranty obligations were as stated in the proposed agreement. However, plaintiff alleges that defendant has since altered its representations, maintaining that the warranty description included in the APA incorporates a separate sixteen page document describing the controlling warranty obligations. Plaintiff contends this agreement contains several differences from the warranty included in the proposed agreement that are favorable to defendant. Plaintiff contends defendant did not provide it with a copy of this allegedly incorporated warranty agreement. Thus, plaintiff states defendant knowingly and intentionally misrepresented the terms of the controlling warranty agreement.

Plaintiff's Count IV is clearly dependent on the contract. Neither party addresses Count IV's dependency. Defendant's response does not address Count IV, as plaintiff initially limited its request to Count VI. Further, the Court assumes plaintiff does not address Count IV's dependency on the contract, as it is

---

[2] Plaintiff alleges that, "[p]rior to purchasing the Aircraft, Cunningham Charter was advised, in the Proposed Agreement, that the warranty offered on the Aircraft provided the following coverage: five years on airframe and Learjet-manufactured components; five years on 2,000 hours on the engines; five years on all avionics; five years on vendor supplied items; and two years on paint and interior" (Doc. 128, p. 7).

indisputable that it alleges a wrong based on the construction and interpretation of the contract, is clearly closely related to the parties' contractual relationship, and it could not exist without the contract. *Amakua,* 411 F. Supp. 2d at 955. Plaintiff's fraud-related allegations directly relate to the controlling terms of the APA's warranty provision. Accordingly, it revolves around the construction and interpretation of the contract. Thus, Kansas law governs the allegations of Count IV, fraudulent concealment: terms and interpretation of warranty. Therefore, it is not necessary to weigh the parties' contacts under Illinois' choice of law rules as to Count IV.

   **c. Kansas Law Governs Count VI**

      **i. Count VI is Dependent on the Contract**

Count VI, fraud by silence,[3] contends that defendant had knowledge of the Learjet 45's allegedly defective windshields prior to plaintiff's purchase, due to previous alleged windshield failures on other Learjet 45 aircrafts. Plaintiff states defendant had an obligation to disclose this alleged knowledge to Learjet 45 purchasers. Further, plaintiff contends the allegedly defective nature of the windshields was a material fact. Thus, plaintiff alleges defendant, "had superior knowledge of the defects and an obligation and duty to communicate this information to [plaintiff] at the time of the APA's execution, prior to delivery of the

---

[3] Defendant correctly notes Illinois courts characterize "fraud by silence" as a claim for fraudulent concealment (Doc. 162, p. 1); *see Ruane v. Amore*, 677 N.E.2d 1369, 1377 (Ill. App. 1997) (listing elements for fraudulent concealment under Illinois law). However, as fraud by silence and fraudulent concealment are different names for the same cause of action, the Court finds this discrepancy immaterial to its analysis.

[Learjet 45], at the time of the inspection and acceptance of flight, and at the actual delivery of the [Learjet 45]" (Doc. 128, p. 11).

Plaintiff argues Count VI, fraud by silence, is not dependent on the contract, as it does not relate to any misrepresentations contained in the APA and it alleges defendant's knowledge of defects prior to entering into the APA with plaintiff. In response, defendant alleges plaintiff's fraud by silence claim is dependent on the APA, as fraud by silence is only actionable assuming a relationship exists among the parties creating a duty to disclose. In this case, defendant argues the APA itself creates the relevant relationship. Thus, as defendant argues the alleged failure to disclose exists solely in the context of the APA, plaintiff's fraud by silence claim is dependent on the contract.

The Court finds Count VI is dependent on the contract, as its allegations cite to defendant's actions during the negotiation and execution of the relevant agreement and relies in part on specific terms of the agreement. While plaintiff correctly notes that it alleges defendant's knowledge of defects prior to entering into the contract with plaintiff, the crux of plaintiff's allegations point to defendant's silence during the agreement's execution. Namely, plaintiff states defendant had a duty to disclose the alleged defects to plaintiff, "at the time of the APA's execution, prior to delivery of the [Learjet 45], at the time of the inspection and acceptance of flight, and at the actual delivery of the [Learjet 45]" (Doc. 128, p. 11). Presumably, plaintiff relies on these time periods as they directly relate to defendant's obligations as stated in the contract (Doc. 128-2, p. 2). Relevantly, the

contract states defendant must permit plaintiff to inspect the Learjet 45 at delivery and participate in a two hour "acceptance flight" controlled by defendant. Further, should the parties note defects during this time, the contract states defendant shall correct such defects. Thus, in stating defendant had a duty or obligation to disclose plaintiff's alleged defects at delivery, plaintiff at least in part relies on the terms of the operative agreement.

Further, the contract states, "[t]his Agreement and the matters referred to herein constitute the entire agreement of [defendant] and [plaintiff] with respect to the [Learjet 45] and supersede and cancel all prior statements, representations, negotiations, understandings, agreements, undertakings, and communications" (Doc. 128-2, p. 3). Plaintiff alleges defendant's silence concerning defects. Thus, as the operative document supersedes all previous negotiations and understandings of the parties, the Court presumes plaintiff shall look in part to the agreement as a means of proving defendant's silence, as the agreement does not note defects existing on plaintiff's Learjet 45 at the time of delivery.

Moreover, in *Amakua*, the court held that the plaintiff claimed "the false representation was in the contract itself;" therefore; the claim was closely related to and could not exist without the contract. *Amakua Dev. LLC*, 411 F. Supp. 2d at 956. Similarly, in *Medline,* the Court held the subject claim for fraudulent inducement was also dependent on the agreement because the fraudulent statements were made in the agreement. *Medline,* 230 F. Supp. 2d at 863 ("[F]or choice of law purposes, a fraudulent inducement claim is considered to be

dependent upon the contract and, therefore, subject to the choice-of-law clause, where the allegedly fraudulent statements were made in the contract.") (citation omitted).

In contrast to *Amakua* and *Medline,* plaintiff alleges silence; not misrepresentation. Thus, the contract cannot contain the fraud which forms the crux of plaintiff's claim. However, similarly to the plaintiffs of *Amakua* and *Medline,* plaintiff at least in part relies on the relevant agreement as proof of fraud. Instantly, while admittedly plaintiff does not claim fraudulent statements exist in the contract itself, plaintiff relies on defendant's obligations as stated in the contract as giving rise to its duty to speak at the time of execution and delivery.

Defendant looks solely to the contractual nature of the parties' relationship as proof of the claim's contractual dependence. However, if the parties' contractual relationship alone dictated the claim's dependence then the terms of the APA choice of law clause would govern every claim arising among the parties. As the Court has previously determined, this is not the case. Further, to the extent defendant argues a claim for fraudulent concealment is not actionable absent a contractual relationship, that is a substantive issue of law determined under whichever state's law the Court deems controlling. However, given the specific allegations at issue, the Court finds plaintiff's fraud by silence claim could not exist without the contract, as plaintiff cites to defendant's actions *after* the contract's signing and during its execution, and additionally relies in part on

specific terms of the controlling agreement. Accordingly, Count VI is dependent on the contract. Thus, Kansas law shall govern Count VI, fraud by silence, in accordance with the APA choice of law clause.

### ii. Contacts Favor Kansas Law

The Court has determined Count VI is dependent on the contract. Thus, the choice of law clause governs and it is unnecessary for the Court to address Illinois' choice of law rules to determine whether the weight of the contacts favor Kansas or Illinois law. However, assuming the clause is not dependent on the contract, Kansas law shall still govern Count VI as the weight of the relevant contacts point to its application.

The Illinois Supreme Court applies the "most significant relationship" of the Restatement (Second) of Conflicts of Law. *See Esser v. McIntyre*, 661 N.E.2d 1138, 1142 (Ill. 1996). In the case of fraud or misrepresentation, the relevant factors include: (1) the place where plaintiff acted in reliance on the defendant's representations; (2) the place where plaintiff received the representations; (3) the place where the defendant made the representations; (4) the domicile, residence, nationality, place of incorporation and place of business of the parties; (5) the place where a tangible thing which is the subject of the transaction (here, the Learjet 45) was situated; and (6) the place where plaintiff was to render performance under a contract which it was induced to enter by the defendant's false representations. *See* Restatement (Second) of Conflict of Laws § 148 (1971)

(fraud and misrepresentation); *see also Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 920 (Ill. 2007).

Further, Illinois courts presume application of the law of the place where the injury occurred, unless Illinois has a more significant relationship with the occurrence and the parties. *Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 903 (Ill. 2007) (citing *See Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970)). As the aforementioned factors demonstrate, in the case of fraud or misrepresentation, the place the defendant allegedly made the misrepresentations, or in this case, fraudulently remained silent, generally determines the place of injury. *See First Nat'l Bank of Boston v. Heur*, 702 F. Supp. 173, 175 (N.D. Ill. 1988) (applying Illinois law).

The relevant contacts of Count VI weigh in favor of Kansas law. The allegations of Count VI hinge on defendant's silence at the time of the execution of the relevant agreement, specifically, the delivery and inspection of the Learjet 45. As a result of defendant's silence, plaintiff's alleged damages state it, "lost the opportunity to rescind the APA, insist upon a permanent repair to the windshields prior to accepting delivery, and/or negotiate a commitment from [defendant] to repair the windshields even outside the term of the warranty if they were unable to repair the windshields within the warranty terms" (Doc. 128, p. 12).

As stated previously, plaintiff's Count VI allegations rely in part on the contract itself, namely defendant's obligation at the time of delivery to note and correct defects. Plaintiff argues Illinois is the place of injury, as the allegedly

defective windshields failed in Illinois and Tennessee. Defendant disputes this contention. However, disputes aside, where the windshields failed is not relevant to the instant inquiry. As defendant correctly states, on the basis of plaintiff's Count VI allegations alone, the injury occurred, if at all, at the time of delivery in Kansas. As to place of injury, the Court notes plaintiff contests defendant's assertion that the inspection flight occurred in Kansas, as plaintiff states it occurred in Arizona (*See* Doc. 128-4). However, plaintiff does not dispute that Kansas was the place of delivery.

The contract states that if defects are not noted, plaintiff shall accept and pay for the Learjet 45 on the delivery date. Thus, defendant's alleged silence occurred at the time of delivery in Kansas, as this is where defendant allegedly fraudulently remained silent as to defects, plaintiff received the fraudulent silence, and where plaintiff acted on the silence by accepting and paying for the Learjet 45. Plaintiff has not offered facts to refute this conclusion, as plaintiff merely lists numerous contacts irrelevant to the instant allegations that allegedly occurred in Illinois.[4] Accordingly, the Court finds Kansas is the relevant place of injury for the allegations of Count VI.

As to other relevant contacts, plaintiff is domiciled in Delaware, the state of its incorporation, and in Illinois, its principal place of business. Defendant is domiciled in Kansas, as it is a Kansas corporation and its principal place of

---

[4] The Court notes plaintiff summarily argues, "when [defendant] failed to disclose the crucial information relating to the defective windshields, [plaintiff] participated in those conversations from Illinois" (Doc. 161, p. 3). While the details of plaintiff's argument are unclear, the Court presumes plaintiff does not refute that the delivery; thus, defendant's non-disclosure, occurred in Kansas.

business is in Kansas.[5] Additionally, plaintiff asserts numerous general contacts with Illinois. Namely, plaintiff alleges some of the negotiations occurred in Illinois. However, plaintiff does not address what specific negotiations occurred in Illinois; thus, the Court is unable to discern whether the discussions related to plaintiff's fraud by silence claim. Further, plaintiff does not contest that the negotiations initially took place in Kansas. Further, plaintiff states it communicated with defendant's representatives in Illinois concerning the "breadth" of the warranty agreement. However, the breadth of the warranty agreement is not pertinent to the allegations of Count VI. Finally, plaintiff states it paid for replacement components from Illinois. However, this factor is also irrelevant to the specific allegations of Count VI. The Court finally notes that plaintiff does not dispute it has maintained the Learjet 45 almost exclusively in Tennessee since its acceptance of the aircraft in Kansas. Thus, this factor is irrelevant to the instant dispute. The Court declines to hold that plaintiff's Illinois domicile is enough to rebut the presumptive application of Kansas law. Accordingly, as Count VI is dependent on the contract and the weight of the relevant contacts favor Kansas, Kansas law applies to the allegations of Count VI.

---

[5] Defendant notes that at the time of the filing of the instant case, it was incorporated in Delaware. However, it has since become a Kansas corporation. Plaintiff does not dispute this fact.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Kansas law shall govern Count IV, fraudulent concealment, and Count VI, fraud by silence, of plaintiff's first amended complaint.

**IT IS SO ORDERED.**

Signed this 2nd day of May, 2012.

Digitally signed by David R. Herndon
Date: 2012.05.02 15:42:22 -05'00'

**Chief Judge**
**United States District Court**