IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CUNNINGHAM CHARTER CORP.,**

**Plaintiff,**

v.

**LEARJET INC.,**

**Defendant.**                                            **No.07-233-DRH**

ORDER

**HERNDON, Chief Judge:**

Before the Court is defendant Learjet Inc.'s supplemental motions in limine (Doc. 196). Plaintiff Cunningham Charter Corporation filed a response in opposition (Doc. 213).[1] For the reasons that follow, defendant's motions are denied (Doc. 196).

In defendant's supplemental motion, defendant seeks the preclusion of any of the following topics in the presence of the jury: 1) evidence that the windshield failures experienced on plaintiff's aircraft or any other Learjet Model 45 aircraft affected flight safety because the Federal Aviation Administration ("the FAA") already determined that such windshield failures did not affect flight safety; 2) evidence related to plaintiff's unilateral decision to ground the aircraft; 3) evidence that the

---

[1]The Court notes that plaintiff's response is twenty-three pages in violation of Local Rule 7.1(d). SDIL-LR 7.1(d) ("No brief shall be submitted which is longer than 20 double-spaced typewritten pages in 12 point font."). Given the number of motions before the Court and the need to quickly rule on these motions, the Court exercised its decision not to strike plaintiff's response and wait on another response in compliance with the local rules, but gives fair warning that any further violation of the local rules, by either party, will not be tolerated.

aircraft's windshields were defective; 4) evidence of windshield failures by other Learjet Model 45 aircrafts; 5) evidence related to the windshield manufacturing process; 6) evidence related to the submission of warranty claims to defendant which plaintiff claims were wrongfully denied or improperly adjudicated; 7) any statements from employees of the windshield manufacturer within the Dayton Report – or any other evidence derived from these statements – as such evidence is hearsay and is not subject to any exception to the hearsay rule; and 8) any reference to the home state of any counsel for the parties to this action. The Court will address each issue in turn.

### I. Applicable Rules

Federal Rule of Evidence 401 holds evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401. Further, relevant evidence is admissible unless a binding rule holds otherwise, while irrelevant evidence is inadmissible. *See* FED. R. EVID. 402. Lastly, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "The trial court's evidentiary decisions, including its rulings on motions in *limine*, are reviewed for abuse of discretion." *United States v. Bradley*, 145 F.3d 889, 892 (7th Cir. 1998).

### II. Windshield Failures and Flight Safety

Defendant seeks to preclude plaintiff from presenting any evidence that the windshields affect flight safety. In essence, defendant contends that because it is undisputed that the FAA did not revoke the aircraft's airworthiness certificate and plaintiff has not identified nor designated any expert who is qualified to testify that the FAA's determination not to revoke was incorrect, plaintiff should be precluded from offering any evidence that the windshields where unsafe or caused a flight safety issue. Plaintiff responds by arguing that the motion is over broad and does not refer to specific evidence which defendant seeks to preclude. Plaintiff believes that the motion should be denied on that basis alone. Moreover, plaintiff asserts that the evidence relating to flight safety is directly relevant to plaintiff's claims in any event, including defendant's knowledge and plaintiff's damages. Plaintiff also points to the fact that in a 1999 PowerPoint presentation titled "Learjet 45 Windshield Failures" instructed pilots not to fly the aircraft if the windshields shattered because of concerns arising from a "complete loss of visibility and windshield" and to land the aircraft immediately. The Court also notes that the "Abnormal Procedures" checklist for a shattered or cracked windshield instructed pilots to "[m]aintain 25,000 feet or below or minimum safe altitude" and "[l]and as soon as practical."

Clearly the windshield failures affected "flight safety" and this is evidence relevant to the claims in this case. The FAA's determination regarding air worthiness certificates is a different issue than the issues involved here, and defendant's own internal documents illustrate that windshield failures were

related to flight safety. Simply because the FAA chose to issue air worthiness certificates does not make this evidence irrelevant to the claims at issue in this case. Defendant's knowledge of the safety of these windshields and what defendant disclosed are highly relevant to the issues at hand. Accordingly, defendant's motion is denied.

### III.  Evidence Related to the Grounding of the Aircraft

Defendant argues that plaintiff should be precluded from presenting any evidence that it unilaterally decided to ground the aircraft because there is no competent evidence that the aircraft is unsafe for operation. As such, defendant contends that plaintiff's decision to ground the aircraft in February 2011, approximately two-and-a-half years after the last windshield failure, is not based on any competent evidence and will be unduly prejudicial to defendant. Defendant also asserts that "the unilateral decision to simply park the [a]ircraft and let it deteriorate is a clear and unacceptable violation of [p]laintiff's duty to mitigate its alleged damages in this case." Plaintiff counters that this evidence is clearly relevant and that its decision to ground the aircraft was based upon sound reasons, including expert advice and the risk of great liability. As to defendant's mitigation of damages argument, plaintiff argues that this is matter that can be explored on cross-examination. The Court agrees with plaintiff.

Here again the evidence is clearly relevant. Even if the evidence goes to the question of whether plaintiff properly mitigated its damages, that is a question of fact for the jury to determine and is relevant to this case. Despite defendant's

arguments, it cannot explain why a customer being fearful of wanting to fly a plane when the windshield keeps malfunctioning would not be relevant to this case. Thus, defendant's motion is denied.

### IV. Defective Windshields

Third, defendant contends that plaintiff should be precluded from presenting evidence that the windshields were defective because the windshields were not defective; they just were "not as reliable as hoped." Further, defendant states that plaintiff "cannot, as a matter of law, allege that the windshields provided on the [a]ircraft were defective and should be precluded from introducing any evidence to that effect." Plaintiff again argues that this motion is overly broad and the more proper course of action would be to raise objections to specific evidence at trial. Moreover, it is plaintiff's position that defendant's definition of defect is too narrow and whether the windshields were "defective" and defendant's knowledge of those defects are at the heart of plaintiff's claims.

Here, clearly whether the quality of the windshields and what defendant knew about them and disclosed to plaintiff are at issue in this case. Otherwise, why bother with a trial? Furthermore, defendant's suggestion that plaintiff "cannot, as a matter of law, allege that the windshields provided on the [a]ircraft were defective and should be precluded from introducing any evidence to that effect" is misplaced. Apparently defendant has confused the standard to be used in a motion in limine as opposed to a motion for summary judgment. The

evidence at issue here is certainly relevant for a number of the reasons as stated in plaintiff's response. Therefore, this motion is denied.

### V. Windshield Failures of Other Learjet 45 Aircrafts

Defendant's next contention is that plaintiff should be precluded from presenting evidence of windshield failures experienced by other Learjet 45 aircrafts. Defendant makes four main points in support of this motion: 1) "Evidence of windshield failures on other Learjet 45 aircraft is unreliable to prove the cause of the windshield failures on the [a]ircraft"; 2) "Evidence that failures occurred on other Learjet 45 aircraft[s] is insufficient as a matter of law to prove that the windshields were defective"; 3) "Evidence pertaining to other Learjet 45 aircraft windshield failures for the purpose of Learjet's notice of an alleged defect is inadmissible because [p]laintiff cannot show that any defect exists"; and 4) "Evidence pertaining to other Learjet 45 aircraft windshield failures should be precluded because any probative value is substantially outweighed by the risks of unfair prejudice, jury confusion and undue delay."

In plaintiff's response in opposition, plaintiff's position is that each of defendant's arguments lack merit "as evidence of windshield failures experienced by other Learjet 45 [a]ircraft[s] has a 'tendency to make a fact more or less probable than it would be without the evidence.'" Plaintiff explains that the "precise cause of those failures is of little import"; the material fact is that the windshields being installed on Learjet 45 aircrafts were failing and shattering,

which go to plaintiff's fraud and breach of implied covenant of good faith and fair dealing claims.

Here again, defendant's argument is denied for much of the same reasons as stated before. Moreover, defendant's knowledge of these other windshield failures is relevant to the issues in this case, and despite defendant's arguments to the contrary, its probative value is not substantially outweighed by the risks of unfair prejudice, jury confusion, and undue delay. Admission of evidence regarding other Learjet 45 windshield failures is not unfairly prejudicial to defendant, and as plaintiff explains, it will not confuse the jury or cause undue delay because plaintiffs will not, and need not, ask the jury to consider evidence on each of the windshields that have failed so that a specific cause of each failure can be determined. Accordingly, defendant's motion is denied.

### VI. Windshield Manufacturing Process

In its fifth point, defendant's argument is that plaintiff should be precluded from presenting any evidence related to the windshield manufacturing process because it is irrelevant to plaintiff's claims. Defendant acknowledges that the Court previously held that Stanley J. Dapkunas' "opinion that Learjet 45 windshields are the product of a flawed manufacturing process is relevant to the instant controversy," but argues that "the Court did not have the benefit of an explanation by Learjet as to why such testimony was irrelevant when it made that ruling." More specifically, defendant states that the manufacturing process is irrelevant to plaintiff's breach of contract and fraud by silence claims because

plaintiff has no evidence that the windshields were defective or unsafe, that the cause of the defect is irrelevant to any warranty claim, and that none of the evidence shows that defendant was aware of any specific manufacturing problem prior to the delivery of the aircraft. Plaintiff responds by contending that defendant has not provided sufficient justification to alter the Court's prior analysis allowing evidence of the manufacturing process, that plaintiff has ample evidence showing that the windshields were both unsafe and defective, and that evidence related to the flawed manufacturing is directly relevant to establish that defendant was aware of the problems associated with defendant's windshields, which is relevant to plaintiff's fraud by silence claim.

In the Court's previous order, the Court noted that "plaintiff's amended complaint alleges, in part, that defendant's sale and delivery of plaintiff's Learjet 45 resulted in breach of contract and fraud by silence, as it did not first disclose the allegedly defective and unsafe nature of the Learjet 45 windshields." Thus, the Court found that "Dapkunas' opinion that Learjet 45 windshields are the product of a flawed manufacturing process is relevant to the instant controversy." Defendant's argument here does not change that conclusion and plaintiff can attempt to show defendant's knowledge regarding the manufacturing process at trial. Ergo, this motion is also denied.

### VII. Submission of Warranty Claims

Next, defendant seeks to preclude plaintiff from introducing any evidence related to the submission of warranty claims by plaintiff and adjudication of those

claims by defendant because no proof of such claims was produced during discovery. Plaintiff notes that defendant previously raised this issue in its motions in limine filed in September 2011 (Doc. 145), and the Court ultimately decided that "[b]ased on the limited record before it, the Court cannot determine the merits of defendant's request." (Doc. 176, p. 14). Thus, the Court denied defendant's request and indicated it would make specific rulings on this issue within the context of the matters presented at trial." *Id.* Plaintiff now suggests that defendant has not presented any new reasons justifying the exclusion of this evidence. The Court agrees. Furthermore, as plaintiff points out, plaintiff has identified a witness to testify regarding the submission of warranty claims. Thus, this motion is also denied.

### VIII.  Dayton Report

Defendant next argues that plaintiff should be precluded from introducing certain evidence derived from the "Dayton Report." Specifically, defendant objects to the opinion of the Dayton Report's author, Daniel Bowman, that the failed windshields caused a flight safety issue due to reduced visibility, to an unknown Sierracin employee's statement that, "I wouldn't put some of these windshields on an automobile," and to any evidence of the Dayton Report's implication that "scrapped" windshields were being delivered for use on the Model 45 aircraft.

The parties agree that the Dayton Report is admissible as a Learjet business record. Despite this, defendant seeks to have several statements excluded from evidence. This is not appropriate because the report is admissible and should not

be altered. Defendant will have the opportunity through examination of a witness or witnesses to explain the matters with which it takes umbrage but it commissioned the study and to alter it to its liking would not be appropriate. Accordingly, this motion is denied.

### IX. Statements by Sierracin Employees Contained In Dayton Report

Defendant next argues that plaintiff should be precluded from introducing any findings set forth in the "Dayton Report" to the extent that they are based upon statements from Sierracin employees because these statements are hearsay and "[n]o exception to the hearsay rule exists which would allow those rank hearsay statements to be admitted despite the fact that they are contained within a document portions of which may be deemed subject to the business records exception." Plaintiff contends that these statements are admissible for a number of reasons, including under the hearsay exception for statements under which a party has manifested an adoption or a belief in the truth and to show defendant's actual or constructive knowledge regarding the manufacturing problems related to the windshields.

As mentioned above, the parties agree that the "Dayton Report" is admissible as a business record. Defendant appears to be arguing, however, that there is a double hearsay problem. The Court disagrees and finds that the evidence is admissible as an exception to hearsay under the business records exception, which the parties agree applies, and also as a "statement offered against an opposing party and . . . is one the party manifested that it adopted or

believed to be true." FED. R. EVID. 801(d)(2)(B); *Wright-Simmons v. The City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (adopting the First Circuit's approach to adoptive admissions by determining whether a document is sufficiently tied to the possessor to the extent the adoptive party accepted and acted upon the evidence). Here, the evidence shows that defendant accepted the Dayton Report, relied on it, and acted upon it by following its recommendations. Thus, the statements are adoptive admissions and not inadmissible hearsay. This does mean that defendant cannot challenge the veracity of the evidence and the weight it should be afforded at trial. See *Wright-Simmons*, 155 F.3d at 1268 ("While it is true that Brown need not have believed every statement in the report to reach the conclusion that Armentrout should resign, that fact goes to the weight of the evidence rather than its admissibility."). Furthermore, the statements would also be admissible as a hearsay exception to show defendant's actual or constructive knowledge, and not for the truth of the matter asserted. See *Cook v. Navistar Int'l Transp. Corp.*, 940 F. 2d 207, 213 (7th Cir. 1991). Therefore, this motion is also denied.

### X. Counsels' Home State

Lastly, defendant asks that the parties be precluded from referring to the home state of any counsel as it is irrelevant to this case and may cause undue prejudice. Plaintiff agrees that it will not refer to opposing counsel as "foreign," "alien," or some other derivation, but as a general matter, argues it should be permitted to refer to counsel's home state during voir dire for example. Plaintiff

agrees that any such reference will not imply something sinister about being an out-of-state attorney.

This motion is denied with the following caveat: should any counsel make any reference to the location of counsel's office in a way that seeks to denigrate in any way or that attempts to curry favor with the jury by comparison to counsel that are local, the Court will not hesitate to call out such counsel in the presence of the jury.  It should be noted that in that unfortunate event, it would appear that half of plaintiff's counsel is located in Clayton, Missouri, which is not in Illinois, and the Court would not hesitate to highlight that fact for the jury.  As such, this motion is also denied.

### XI. Conclusion

For the reasons stated above, defendant's supplemental motions in limine (Doc. 196) are denied.

**IT IS SO ORDERED.**

**Signed this 12th day of July, 2012.**

Digitally signed by David R. Herndon
Date: 2012.07.12 15:58:14 -05'00'

**Chief Judge**
**United States District Court**